[L. A. No. 19220. In Bank. June 5, 1945.]

THE PEOPLE, Respondent, v. ONE 1941 FORD 8 STAKE TRUCK, Defendant; CONSOLIDATED PRODUCE COMPANY LTD., Appellant.

Richard J. O. Culver and Felix H. McGinnis for Appellant.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

EDMONDS, J.—The Consolidated Produce Company has appealed from an adverse judgment rendered in a proceeding authorized by the Health and Safety Code for the purpose of forfeiting to the state a 1941 Ford truck upon the ground that it was used to unlawfully transport narcotics. The defense unsuccessfully urged in the trial court and now presented upon appeal is that a vehicle in the possession of an employee of the owner, but being used for the unlawful purpose in violation of specific restrictions as to the place of operation fixed by the owner, is not subject to forfeiture.

The appellant is engaged in the wholesale fruit and vegetable business. It directed an employee, Irving Schiller, to take one of its trucks and deliver some cucumbers to a point

several miles from the company's place of business. At the time, Schiller asked for permission to use the truck for a personal errand and was refused. He was told to make the delivery and to then return the vehicle to the company's store.

Contrary to these instructions, Schiller, after taking the cucumbers to the customer, drove to a destination some four or five miles away from any reasonable route he might have traveled in carrying out his orders, and secured some marijuana. As he was returning to his employer's place of business, he was arrested and the truck seized. Subsequently the appellant for the first time learned of the illegal use of its truck. Upon this evidence, the trial court found that Schiller was in the possession of the truck with the consent of the produce company, its legal and registered owner; that Schiller violated his instructions in using the vehicle to go to the place where he obtained the marijuana, and that the owner had no knowledge of such use of its property by him. As its conclusions of law, the court decided that the truck should be forfeited to the state and judgment was entered accordingly.

The attorney general contends that the judgment must be affirmed upon the authority of *People* v. *One 1933 Plymouth Sedan,* 13 Cal.2d 565 [90 P.2d 799], where this court said: "It has long been the settled law that the owner of a vehicle who has given consent to its operation by another, is not deprived of any constitutional right by the forfeiture of his property on account of the operator's violation of a statute such as [the confiscatory provisions of the Health and Safety Code] . . . even though such owner is without knowledge of or has failed to acquiesce in its illegal use." To the contrary, the appellant urges that as an innocent owner may successfully defend against a forfeiture upon the ground that the vehicle was used without his consent (*People* v. *One 1937 Plymouth 6,* 37 Cal.App.2d 65 [98 P.2d 750]; *People* v. *One 1939 La Salle,* 45 Cal.App.2d 709 [115 P.2d 39]), it follows that the same rule should apply where, as in the present case, an employee to whom a vehicle is entrusted uses it for an unauthorized purpose and without the area specified for its use. Or, stated differently, the truck owner, relying upon *Henrietta* v. *Evans,* 10 Cal.2d 526 [75 P.2d 1051], asserts that where a vehicle is used for a purpose and in an area not authorized by the owner, such use must be deemed to be without the own-

er's consent and, under such circumstances, the automobile is not subject to forfeiture.

In the division of the Health and Safety Code relating to narcotics the provisions for enforcement are found in chapter 7, which includes article I entitled, "Forfeiture of Vehicles." The first section of that article reads: "A vehicle used to transport any narcotic shall be forfeited to the State." (§ 11610.) The following sections state the procedure by which a judgment of forfeiture may be obtained. Among those provisions is one giving the claimant of any interest in a seized vehicle the right to prove his lien or sales contract to be bona fide and that his title "was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged." (§ 11620.) "In the event of such proof," the vehicle must be returned to the lien claimant or vendor, if the value of the lien or the purchase price is equal to or in excess of the value of the vehicle, the intention being to forfeit only the "interest of the purchaser." (§ 11622.) If the amount due to the claimant is less than the value of the vehicle, it shall be sold and the proceeds of the sale, after the payment of the amount of the lien or the balance of the purchase price, paid to the state. (§ 11623.) "The provisions of this division relative to forfeiture of vehicles do not apply to a common carrier. . . ." (§ 11629.)

The use made by Schiller of the truck of his employer is within the express terms of the legislation enacted for the purpose of curbing the traffic in narcotics and, applying the doctrine of *expressio unius est exclusio alterius,* is not one which exempts the owner from the drastic statutory penalty.

It is true that the Health and Safety Code does not expressly exempt from confiscation an automobile taken in the first instance without the owner's consent and used to transport narcotics but it has been construed as not authorizing forfeiture under such circumstances. The reasoning leading to this conclusion is that a contrary determination would amount to an unconstitutional deprivation of property without due process of law (*People* v. *One 1937 Plymouth 6, supra*), and where a statute is susceptible of two interpretations, one of which would satisfy constitutional guarantees, if possible the courts will uphold the legislation. (*Bod-*

*inson Mfg. Co.* v. *California Emp. Com.*, 17 Cal.2d 321, 326-327 [109 P.2d 935].)

But there are no constitutional impediments to a forfeiture where the owner entrusts his vehicle to another who uses it illegally, even though the owner does not know of or acquiesce in such use. The distinction between such a situation and the plight of an automobile owner who failed to give possession of his car or consent to its operation is based upon the means by which the one found transporting the contraband obtained the vehicle. An owner who entrusts the possession of his vehicle to another thereby accepts the risk that it will be used contrary to law, but, in the operation of an automobile without the owner's consent to do so in any manner or at all, there is no element of choice or volition and a complete lack of permission, express or implied, on the part of the owner.

In *Van Oster* v. *Kansas*, 272 U.S. 465 [47 S.Ct. 133, 71 L.Ed. 354], a forfeiture was upheld under legislation similar to that now under consideration. The owner entrusted his vehicle to another who, without the owner's knowledge or consent, used it to transport liquor, and the court said: ''It is not unknown or indeed uncommon for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has entrusted it. Much of the jurisdiction in admiralty, so much of the statute and common law of liens as enables a mere bailee to subject the bailed property to a lien, the power of a vendor of chattels in possession to sell and convey good title to a stranger are familiar examples. . . . They suggest that certain uses of property may be regarded so undesirable that the owner surrenders his control at his peril. The law thus builds a secondary defense against a forbidden use and precludes evasions by dispensing with the necessity of judicial inquiry as to collusion between the wrongdoer and the alleged innocent owner. So here the legislature, to effect a purpose clearly within its power, has adopted a device consonant with recognized principles and therefore within the limits of due process.''

Applying the same reasoning in the present case it follows that no constitutional prohibition requires that the Health and Safety Code be construed as contended for by the appellant. Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics,

with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of affirmance as the statute under which this proceeding was instituted seems to be perfectly plain and does not leave any room for construction which would justify a court in relieving an owner of an automobile of the penalty of forfeiture when it is used for the transportation of narcotics.

While section 11610 of the Health and Safety Code here involved is not an exact counterpart of section 402 of the Vehicle Code the same rules should be applicable to their interpretation. For this reason I desire to refer to my concurring opinion in the case of *Burgess* v. *Cahill, ante,* p. 320 [158 P.2d 393], where I expressed my views with respect to the interpretation which should be placed upon section 402 of the Vehicle Code, which views are applicable to the provisions of the Health and Safety Code here involved, and for these reasons the judgment, in my opinion, should be affirmed.