[Civ. No. 13124. First Dist., Div. One. Dec. 17, 1946.]

THE PEOPLE, Respondent, v. ONE 1940 CHRYSLER, EN-GINE NO. C-28-10132, Defendant, ANGLO CALIFOR-NIA NATIONAL BANK OF SAN FRANCISCO (a Corporation) et al., Appellants.

Robert G. Partridge and Remington Low for Appellants.

Robert W. Kenny, Attorney General, and Ralph W. Scott, Deputy Attorney General, for Respondent.

SCHOTTKY, J. pro tem.—At about 10:45 p. m. on September 20, 1944, two police officers observed a Negro woman named Barbara May Reader and a sailor getting into a parked 1940 5-passenger Chrysler coupe automobile on Lewis Street between 3rd and 5th Streets in Oakland. The officers circled the block in their automobile and came up behind the Chrysler and the woman and the sailor were then seated in the back seat. The officers asked the couple to get out of the car and made a search of the automobile and also of the occupants. On the floor under the rubber floor mat on the left hand side in front of the driver's seat they found two marihuana cigarettes, but they found none on the person of either of the occupants, and both occupants denied any knowledge of any marihuana cigarettes in the car. Miss Reader had the keys to the car, which was registered in the name of the intervenor Mack Pennewell. Also on the back seat of the car were some coats and other things. Later, about 2 a. m., the officers found Pennewell at the Clover Club on 7th Street in West Oakland. He denied any knowledge of the marihuana cigarettes being in the car, but admitted that Miss Reader was a friend of his and that he had loaned her the car about 3 o'clock on the previous afternoon as she wanted to do some shopping; that she was to be back in an hour, but did not return; that he gave her the keys to the car. On cross-examination Pennewell admitted that he had been convicted of a felony in connection with the sale of marihuana but the date of such conviction was not shown.

Notice of seizure and intended forfeiture was served upon Pennewell as the registered owner and upon Anglo-California National Bank as the legal owner of the said automobile, it being alleged that "said vehicle was used to unlawfully keep, deposit, conceal, convey, carry or transport narcotics, to-wit: Marihuana, or said narcotics were unlawfully possessed by an occupant thereof . . . "

Appellant bank and Pennewell intervened and filed answers denying any knowledge that said automobile was to be used by anyone for the transportation of any narcotic drugs or the granting of permission to anyone to so use it. The appellant bank was unable to show that it had made a reasonable investigation of the character, reputation and moral respon-

sibility of Pennewell, the registered owner, and the court found that no such investigation was made. From the judgment of forfeiture entered by the court both intervenors have appealed, but no issue of any right in the bank independent of the state's right to forfeit Pennewell's interest in the automobile is involved upon this appeal.

Section 11610 of the Health and Safety Code provides as follows: "A vehicle used to unlawfully transport any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed, or in which any narcotic is unlawfully possessed by an occupant thereof, shall be forfeited to the State." The succeeding sections state the procedure by which a judgment of forfeiture may be obtained. Section 11012 of the same code provides: "'Transport,' as used in this division, with reference to narcotics, includes 'conceal,' 'convey,' or 'carry.'"

Appellant first attacks the constitutionality of section 11610 and argues that said section, "insofar as it pertains to the keeping, depositing or concealing of narcotics is unconstitutional since it provides for the deprivation of property without due process of law." This contention requires only brief mention because the constitutionality of said section has been upheld in numerous decisions in which forfeitures have been sustained against owners who had entrusted vehicles to third persons, even in instances in which the owners had no connection with or knowledge of the intended wrongdoing of such third persons who afterwards violated the law by transporting, concealing, etc., narcotics or other contraband in such vehicles. (*Van Oster* v. *Kansas*, 272 U.S. 465 [47 S.Ct. 133, 71 L.Ed. 354]; *People* v. *One Ford V-8 Tudor Sedan*, 12 Cal.App.2d 517 [55 P.2d 908]; *People* v. *One Ford Coupe*, 10 Cal.App.2d 321 [51 P.2d 882]; *People* v. *One 1941 Chrysler Tudor*, 71 Cal.App.2d 312 [162 P.2d 653].)

If an automobile is taken without the consent of the owner, and used to transport, conceal, etc., narcotics against the will and knowledge of such owner, this will constitute a defense available to him in a forfeiture proceeding. (*People* v. *One 1937 Plymouth 6*, 37 Cal.App.2d 65 [98 P.2d 750]; *People* v. *One 1941 Buick Sport Coupe*, 28 Cal.2d 692 [171 P.2d 719].) Although that defense is not contained in the statute, it has been implied by the court to preserve the constitutionality of the statute. (*People* v. *One 1941 Ford 8 Stake Truck*, 26

Cal.2d 503 [159 P.2d 641] ; *People* v. *One 1941 Chrysler Tudor, supra; People* v. *One 1941 Buick Sport Coupe, supra.*)

As was said by our Supreme Court in *People* v. *One 1941 Ford 8 Stake Truck, supra*, at page 507 : "Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded."

We therefore hold that the contentions of appellants that section 11610 is unconstitutional are without merit.

Appellants next contend that there is no evidence that either Pennewell or Miss Reader had any knowledge that marihuana was in the automobile and that, therefore, the evidence is insufficient to sustain the judgment of forfeiture. Appellants argue that "before an automobile in which narcotics are kept, deposited or concealed can be forfeited, it must be shown that the owner had knowledge of the presence of the narcotics."

In support of this contention appellants rely strongly upon the recent case of *People* v. *One 1941 Buick Sport Coupe, supra*. In that case the trial court found the following facts : That the vehicle was seized while in the possession of the registered owner ; that in the car with him at that time were James Taylor, an acquaintance of his, and another passenger whose name does not appear in the record ; that the three occupants "were enroute to attend a theatre at the time of the seizure of said vehicle and the arrest of said James Taylor and said registered owner ; that at said time while an occupant of said car the same James Taylor had in his possession marihuana cigarettes ; that said possession was without the knowledge of said registered owner . . ."

After first rendering a judgment in favor of the owners and ordering the automobile returned to them, the trial court, upon motion, vacated the judgment and entered a new judgment forfeiting the vehicle to the state upon the same findings. In reversing the judgment our Supreme Court said at pages 694-695 : "It has been held that 'there are no constitu-

tional impediments to a forfeiture where the owner entrusts his vehicle to another who uses it illegally, even though the owner does not know of or acquiesce in such use.' (*People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503, 507 [159 P.2d 641]; see, also, *People* v. *One 1933 Plymouth Auto*, 13 Cal. 2d 565, 568 [90 P.2d 799]; *Van Oster* v. *State of Kansas*, 272 U.S. 465 [47 S.Ct. 133, 71 L.Ed. 354]; *United States* v. *One Lincoln Touring Car*, 11 F.2d 551.) Justification for the confiscation under such circumstances has been placed upon the ground that 'certain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril.' (*Van Oster* v. *Kansas, supra*, p. 467.) But property taken from the owner without his consent stands in a different category, and the Health and Safety Code has been construed as not authorizing the confiscation of a stolen automobile. 'The reasoning leading to this conclusion is that a contrary determination would amount to an unconstitutional deprivation of property without due process of law (*People* v. *One 1937 Plymouth 6* [37 Cal.App.2d 65 (98 P.2d 750)]), and where a statute is susceptible of two interpretations, one of which would satisfy constitutional guarantees, if possible the courts will uphold the legislation.' (*People* v. *One 1941 Ford 8 Stake Truck, supra*, p. 506; see, also, *United States* v. *One Buick Roadster*, 280 F. 517; *United States* v. *One Ford Coupe Automobile*, 21 F.2d 639.)

"The line of demarcation established by these decisions is that if the owner has not consented to the use of his property, the government may not confiscate it. But if consent has been given, forfeiture is allowed regardless of the owner's lack of knowledge of or consent to the unlawful use.· (*People* v. *One 1937 Plymouth 6*, 37 Cal.App.2d 65, 70 [98 P.2d 750].) 'An owner who entrusts the possession of his vehicle to another thereby accepts the risk that it will be used contrary to law, but, in the operation of an automobile without the owner's consent to do so in any manner or at all, there is no element of choice or volition and a complete lack of permission, express or implied, on the part of the owner.' (*People* v. *One 1941 Ford 8 Stake Truck, supra*, p. 507.) These distinctions rest upon the fundamental principle that, to justify the forfeiture of property, there must be some connection, either by agency, consent to operate or control the vehicle, knowledge, negligence, or connivance between the owner of the seized vehicle and the person committing the crime. (*People*

v. *One 1941 Cadillac Club Coupe,* 63 Cal.App.2d 418, 422 [147 P.2d 49] ; *Peisch* v. *Ware,* 4 Cranch (8 U.S. 208, 218) 347 [2 L.Ed. 643] ; *United States* v. *One Haynes Automobile,* 290 F. 399; *The Cargo Ex Lady Essex,* 39 F. 765, 767.)

"As the findings of fact in the present case declare that, at the time the state seized the automobile it was in the possession of Marquez and under his control and that he had no knowledge of the unlawful conduct of Taylor, there is no basis for the judgment of forfeiture."

We do not regard the foregoing case as determinative of the issue of the sufficiency of the evidence in the instant case as the facts are different. In the Buick Sport case the narcotics were found on the person of an occupant of the car other than the owner, and the trial court found that the owner was in possession and control of the automobile and had no knowledge of the possession of the marihuana cigarettes by the occupant. In the instant case the marihuana cigarettes were found under the floor mat in the automobile which was in the possession of Miss Reader, to whom Pennewell, the owner, had loaned the automobile.

The question which we have to determine here is whether or not there is sufficient evidence in the record to support a finding that either Pennewell or Miss Reader had knowledge of the presence of the marihuana in the automobile. Unless the evidence, and the inferences that may reasonably be drawn therefrom, are sufficient to prove such knowledge, the judgment of forfeiture must be held to be unsupported. As is said in 23 Am.Jur. 616, section 19: "Upon an information to forfeit property, it has been held that it is not necessary that the matters charged be proved beyond a reasonable doubt." And at page 644 of the same volume it is stated: "The rule is well settled that a proceeding to recover a statutory penalty is ordinarily civil in nature . . ."

While a higher degree of proof is required in a criminal prosecution than is required in an action under a forfeiture statute, we believe that an analogy may be drawn between the instant case and the recent case of *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433], in which our Supreme Court held that the jury must be convinced that one accused of possessing a narcotic found in a cache on his premises or within reach of his habitation must have knowledge of the presence of such narcotic and that such knowledge is the essence of the crime of possession under the Narcotic Act.

That case involved a prosecution under Health and Safety Code, section 11160 (wilfully, unlawfully and feloniously possessing marihuana). Defendant was a prisoner in a prison farm. The evidence showed that each prisoner was supplied with a small metal box for the storage of toilet articles. These containers were left unlocked alongside of the beds of their respective owners in the bunkhouse in which defendant was housed with some thirty other prisoners. Marihuana was discovered in defendant's metal container. Defendant disclaimed any knowledge concerning how the marihuana got into his box. A judgment of conviction was reversed on the ground that the trial court had refused to instruct the jury that before defendant could be found guilty of unlawful possession of the marihuana, he would have to be possessed of knowledge of the presence of such narcotics among his belongings. The court said at page 456: "Thus instruction 12 invoked the element of knowledge in the sense of defendant's *awareness of the presence* of the marijuana in the box given him for the storage of his personal effects at the prison farm and so presented to the jury an issue of fact determinative of defendant's guilt or innocence of the possession prohibited by statute.

"The importance of proper instructions on the question of defendant's possession of the forbidden property is readily apparent from the record in this case. Matters tending to establish defendant's guilt are the fact that the marijuana was found in his box and the circumstance of his silence in the face of Officer Huber's accusation in the camp's bunkhouse. (8 Cal.Jur. 103, and cases there cited.) Matters tending to establish defendant's innocence are the fact that the box was unlocked, showing that the marijuana conceivably could have been placed there by someone other than defendant, and defendant's denial at the trial that he had ever seen the 'stuff' prior to its discovery by the officers. Thus, this may be said to be a 'close case' on the record before us. . . . [p. 457] Here the principal fact relied upon by the prosecution is the finding of marijuana in defendant's unlocked box and because of the denial by defendant of knowledge of its presence there, it was the duty of the trial court, on proper instructions, to submit to the jury the question as to whether defendant had knowledge of the presence of the marijuana. (*People* v. *Gin Shue,* 58 Cal.App.2d 625, 628 [137 P.2d 742].) To fail to instruct on that point might well

have misled the jury into believing either that knowledge was not essential or that any object found among defendant's personal effects was conclusively presumed to be there of his own knowledge. The error which would be involved in an express declaration to that effect is obvious, for knowledge is essential and though the finding of an object among defendant's effects would support an inference, it would not give rise to a conclusive presumption that the object was there with defendant's knowledge."

We believe that it is clear from the opinion in the Gory case that if the jury had been properly instructed as to the necessity of proving knowledge by defendant of the presence of the marihuana, the conviction would have been sustained, as the court states that "though the finding of an object among defendant's effects *would support an inference,* it would not give rise to a conclusive presumption *that the object was there with defendant's knowledge."* (Emphasis added.)

Applying the reasoning of the Gory case to the instant case, we believe that the evidence is sufficient to support the judgment of forfeiture. As already set forth the marihuana cigarettes were found under the rubber floor mat on the left hand side in front of the driver's seat at about 10:45 p. m. The automobile had been loaned by Pennewell to Miss Reader about 3 p. m. and she had had it during the intervening period. Pennewell testified that she stated that she wanted to do some shopping and would be back in an hour. The car was parked on Lewis Street and in view of the facts that Miss Reader had coats, a douche bag and other things on the back seat of the car, and also had the keys to the car, there can be little doubt that the car was locked when Miss Reader entered it with the sailor whom she had picked up at the nearby bar. The officers saw them enter the car and saw them sitting in the back seat. After asking them to get out of the car, the officers immediately searched the car and found the marihuana cigarettes in the car but none on the person of either Miss Reader or the sailor, both of whom denied knowledge of its presence. The record shows that Pennewell had known Miss Reader for about three months; that she was a "regular customer" at the Sea Cave Cafe where he was bartender; that she was a good friend of his; that they had drunk together, exchanged letters, and had also talked together "sometimes" at the Clover Club, a Negro

club on 7th Street, after he got through work at midnight; that when Pennewell was found by the police officers at 2 a. m. he was waiting at the Clover Club for Miss Reader. Miss Reader was not a witness at the trial but Pennewell denied all knowledge of the presence of the marihuana in the car. He admitted, however, upon cross-examination, that he had been previously convicted of a felony in connection with the sale of marihuana.

We believe that the foregoing evidence was sufficient to support an inference that the marihuana was in the automobile with the knowledge of either Pennewell or Miss Reader, or both. It is true that Pennewell denied at the trial, and Miss Reader denied to the officers, that they had any knowledge of the presence of the marihuana, but the trial court was not bound to believe this testimony. As this court said in *People* v. *One 1941 Chrysler Tudor,* 71 Cal.App.2d 312, at page 315 [162 P.2d 653]: ''The trier of the facts is the exclusive judge of the credibility of the witnesses, and while a witness is presumed to speak the truth, this presumption may be repelled by the manner in which he testifies, by the character of his testimony, or by his motives or obvious interest. (Code Civ. Proc., § 1847; see cases collected 27 Cal.Jur. § 154, p. 179.) Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. (*Hicks* v. *Reis,* 21 Cal.2d 654 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal.2d 457 [126 P.2d 868]; *Hinkle* v. *Southern Pacific Co.,* 12 Cal.2d 691 [87 P.2d 349]; *Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal. App.2d 556 [90 P.2d 371]; *Burke* v. *Bank of America,* 34 Cal.App.2d 594 [94 P.2d 58]; *People* v. *La Fleur,* 42 Cal. App.2d 50 [108 P.2d 99].)'' The denials by Pennewell and Miss Reader only created a conflict in the testimony and presented to the trial court an issue of fact as to whether they, or either of them, had knowledge of the presence of the marihuana. We think the true rule is that when narcotics are found concealed in or about an automobile, at least where such automobile is in the possession of the owner or his entrustee, the trial court may infer knowledge on the part of the owner. Such facts are sufficient to cast the burden of going forward with an explanation on the owner. The sufficiency of such explanation is for the trial court.

Appellants suggest that the parked car may have been used by some third person to conceal the marihuana without

the permission of appellants or Miss Reader. This was, of course, a consideration to be weighed by the trial court in the light of all of the evidence and the surrounding circumstances. There was, however, no evidence introduced that would lend weight to such a conclusion, and, in the absence of some evidence pointing toward its probability, it would seem highly improbable that some stranger would attempt to conceal marihuana in a parked car that he chanced to see unless he were hotly pursued by the officers and wished to abandon the contraband. We are, therefore, of the opinion that the evidence in the instant case was sufficient to prove at least prima facie that appellant Pennewell and Miss Reader, or both, had knowledge of the presence of the marihuana cigarettes in said automobile. Our attention has been called to no case, and we know of none, in which a judgment of forfeiture has been reversed upon the ground of the insufficiency of the evidence, where the automobile was in the possession and control of the owner or his entrustee, and the owner or his entrustee was in the automobile at the time the contraband narcotic was found concealed therein.

It is true that there is language in *People* v. *Bledsoe,* 75 Cal.App.2d 862 [171 P.2d 950], somewhat at variance with the views herein expressed. Insofar as that case holds that the explanation or denial of the owner in possession must be believed as a matter of law, such holding is directly contrary to the holding in *People* v. *Gory, supra,* upon which the opinion is based. We think the Gory case states the proper rule.

The final contention of appellants is that the trial court failed to make any finding that either Pennewell or Miss Reader had any knowledge of the presence of the marihuana in the automobile. An examination of the findings reveals that no such finding was made. What we have hereinbefore said as to the sufficiency of the evidence does not eliminate the necessity of such a finding. Appellants were entitled to a finding upon the important and material issue of knowledge, and there was a clear conflict in the evidence upon that issue.

It is the settled law in California that where an action is tried before the court without a jury, findings are required on all material issues raised by the pleadings and the evidence, unless they are waived, and that if the court renders judgment without making findings on all material

issues, the judgment must be reversed. (*James* v. *Haley*, 212 Cal. 142, 147 [297 P. 920].) See, also, cases cited in 23 McKinney's New Cal.Dig., p. 577, § 286; *Powell* v. *Johnson*, 50 Cal.App.2d 680 [123 P.2d 875].)

The absence, therefore, of a finding upon the issue of knowledge of the presence of the marihuana requires a reversal of the judgment and the making of a finding upon that issue. This the trial court may do either upon the evidence now in the record, or if the court desires additional evidence upon that issue, it may receive it. However, no additional evidence is necessary upon the remaining issues. (See *Panama Mail S. S. Co.* v. *Vargas*, 281 U.S. 670 [50 S.Ct. 448, 74 L.Ed. 1105]; *Lane* v. *Safeway Stores*, 33 Cal.App.2d 169 [91 P.2d 160].)

In view of the foregoing the judgment is reversed with directions to the trial court to make a finding upon the issue of whether or not Pennewell or Miss Reader, or both, had knowledge of the presence of the marihuana in said automobile, and that said finding be made either upon the present record, or if the court desires additional evidence upon such issue, then upon such additional evidence, and that judgment then be entered in accordance with said findings as amended and the views hereinbefore set forth.

Peters, P. J., and Ward, J., concurred.