THE STATE OF TEXAS V. WAYNE RICHARDS ET AL

No. A-6145. Decided April 24, 1957.
(301 S.W. 2d Series 597)

*Howard M. Fender,* Criminal District Attorney, *Hugh F. King,* Assistant District Attorney, both of Fort Worth, for appellant State. *Wardlaw, Bradley & Cochran* and *Ernest May,* all of Fort Worth, for appellee, Richards.

MR. JUSTICE WALKER delivered the opinion of the Court.

This case, which presents questions of the construction and constitutionality of Art. 725d, Vernon's Ann. Texas Penal Code, is before us on the following certificate from the Court of Civil Appeals at Fort Worth:

"In this case, the State of Texas appeals from a judgment

of the District Court denying its application to confiscate and forfeit a motor vehicle owned by appellee Richards and which had been used by Dean Portwood in the unlawful transportation of narcotics, to wit, two dolophine pills.

"The following are the undisputed facts in the case:

"The vehicle in question is a pickup truck. It was parked at Richards' place of business in Fort Worth. The possession of the vehicle on the occasion in question was secured by Portwood by his repersentation to Richards that he wanted to borrow the vehicle for thirty or forty minutes in order to drive from Richards' place of business, where Portwood was a customer, to his brother's apartment in another part of the city, for the purpose of changing clothes. Portwood was arrested a few minutes after he left the apartment. He had the pills in his shirt pocket. He had them on his person when he drove the vehicle from Richards' place of business to the apartment. The lending of the vehicle by Richards was gratuitous. He did not know or suspect that Portwood possessed any narcotics, and did not know that Portwood had ever used narcotics. Portwood's transportation of the narcotics by means of the vehicle was without Richards' consent or knowledge.

"The suit for confiscation and forfeiture was brought under Article 725d, Vernon's Penal Code, which became effective May 21, 1955. The trial court held that if the Legislature intended by that Article to authorize the confiscation and forfeiture of a motor vehicle, the owner of which is innocent of knowledge or complicity in any offense defined by the Act, to that extent the Article was not within the power of the Legislature as limited by the Bill of Rights, as set forth in Article 1 of the State Constitution, and denied the relief sought by the State.

" * * * * * *

"There is a lack of uniformity among the authorities as to whether such an act, or a similar one, contemplates the forfeiture of the property interest in a vehicle of one who is without complicity in or knowledge of its use in the commission of an illegal act; and, if so, whether the due process clauses or other provisions of the various constitutions inhibit such legislation.

"In view of that lack of uniformity in the holdings, and the eminence of the courts pronouncing on either side of the ques-

tions involved, we deem it advisable to present to Your Honors, under Rule 461, T. R. C. P., the following questions for adjudication:

"First: Did the Legislature intend that the property of an innocent owner of any such vehicle used by another in the violation of the Article should be forfeited?

"Second: If such was the intention of the Legislature, does the Article in that respect contravene the due process clause or any other provision of the State Constitution?"

We answer the first question in the affirmative. Section 1 of the statute makes it unlawful to transport or possess any contraband narcotics in a vessel, vehicle or aircraft. The initial clause of the succeeding section provides that any vessel, vehicle or aircraft used in violation of Section 1 shall be seized and forfeited to the Texas Department of Public Safety, but certain property and interests are exempted by other provisions of the Act. A vehicle used by a common carrier may not be confiscated unless it appears that the owner or person in charge consented to or knew of the illegal act. It is also provided that no vehicle shall be forfeited where it is shown that the illegal act was committed by a person other than the owner while the vehicle was in the possession of one who acquired or retained same in violation of law. The rights of a bona fide mortgagee are protected by the provisions of Sections 6 and 7, which require that the vehicle be released to such lienholder if its value is less than the amount of the lien and that in the event of a sale the proceeds be paid to mortgagee as his interest may appear.

■ It is a familiar rule of statutory construction that an exception makes plain the intent that the statute should apply in all cases not excepted. Gulf C. & S. F. Ry. Co. v. Temple Grain & Hay Co., 122 Texas 288, 58 S.W. 2d 47; Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S.W. 2d 56; Broughton v. Humble Oil & Refining Co., Texas Civ. App., 105 S.W. 2d 480, wr. ref. The Legislature has here provided for the forfeiture of any vehicle used in violation of the statute and has then spelled out certain exceptions. The nature of these excptions makes it clear that the lawmakers regarded the language of the first clause of Section 2 as sufficiently broad and comprehensive to require the forfeiture of the property rights of all persons interested in the vehicle regardless of their complicity vel non, and intended that it should be given that effect. When provision is made for the protection of the innocent common

carrier, bona fide lienholder, and owner whose automobile is unlawfully taken by the wrongdoer, we cannot believe that the possibility that a vehicle lawfully entrusted by an innocent owner to another might be used by the latter to transport narcotics was entirely overlooked. Nowhere in the Act can be found the slightest intimation that a vehicle would be exempt from forfeiture in the last mentioned situation, and it is our opinion that the Legislature did not intend that it should be.

■ The second question is more difficult, but we have concluded that it must be answered in the negative. According to the ancient common law doctrine of deodand, any personal chattel which was the immediate instrument causing the death of a human being was forfeited to the king for sale. This doctrine, which was finally discarded in England by statute, was so repugnant to the American concept of justice that it was not included as part of the common law of this country. See 26A C.J.S., Deodand, p. 185; 23 Am. Jur., Forfeitures & Penalties, p. 601, Sec. 4. In the present case, however, we have a statutory forfeiture prescribed by the Legislature in the exercise of the police power of the State. The right of the State, in the rasonable exercise of such power, to declare a forfeiture of the property of private individuals has long been recognized. Pharris v. Kimbrough, Texas Civ. App., 118 S.W. 2d 661, wr. ref.; Skipper-Bivens Oil Co. v. State, Texas Civ. App., 115 S.W. 2d 1016, wr. ref.

Police regulations are not unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals. Damage to or loss of property resulting from a proper exercise of such power does not constitute a taking of property under the right of eminent domain, and compensation is not required to be made therefor. See Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S.W. 648; 70 L.R.A. 850; Lombardo v. City of Dallas 124 Texas 1, 73 S.W. 2d 475. And a statute providing for the forfeiture of property used in the commission of a penal offense does not violate the constitutional guaranty that conviction of crime shall not work a forfeiture of estate. Pharris v. Kimbrough, supra.

Appellee argues that since the property rights of innocent common carriers and lien claimants are exempt from forfeiture under the statute, the equal rights clause of our Constitution should assure the same exemption to the innocent owner. We do not agree. It is well settled that Art. 1, Sec. 3, of the Constitu-

tion does not forbid the classification of subjects and persons for the purpose of regulatory legislation. The classification must be based on a real and substantial difference having relation to the subject of the particular enactment, but if there is a reasonable ground therefor and the law operates equally on all within the same class, it will be held valid. Friedman v. American Surety Co., 137 Texas 149, 151 S.W. 570. The holder of a mortgage usually has no control over the vehicle that is security for his lien, while a common carrier is generally bound to receive for carriage all proper persons who desire and offer to become passengers if the accommodations are sufficient. The owner of an automobile, however, may deny others the right to use the same, and his rights are protected by the statute unless he does entrust it to another. It is our opinion that the classifications and exceptions made by the statute are reasonable and do not contravene the constitutional guaranty of equal rights.

Although the second question does not specify all of the constitutional provisions that should be considered, it appears to us that the foregoing discussion disposes of all except Art. 1, Sec. 19, which provides that no person shall be deprived of property except by due course of law. The automobile involved in this suit is registered under our motor vehicle registration law and had a Texas license at the time of its seizure. Such a vehicle may be forfeited under the statute only by judment of a court of competent jurisdiction after the owner and lienholders of record, as well as the person in possession, have been served with notice of the seizure and intended forfeiture and given an opportunity to be heard. As applied in this action, therefore, the statute clearly satisfies the constitutional requirement of due process in its procedural aspect.

On the question of substantive due process, appellee cites General Motors Acceptance Corporation v. State, 118 Texas 189, 12 S.W. 2d 968, which involved a proceeding under the now repealed provisions of Art. 5112, Texas Rev. Civ. Stat. 1925, to condemn an automobile unlawfully used to transport intoxicating liquor. It was held that a sale under this statute would not prejudice the rights of an innocent lienholder, the Court reasoning that the forfeiture was provided as a penalty for the commission of crime and that the Legislature did not intend that a person innocent of complicity in the offense should be so punished. Among the reasons given for the latter conclusion, it was said that "* * * our Bill of Rights, including due process as an indispensable requisite, opposes insuperable obstacles to that species of fiat, and it cannot be supposed that the Legislature

intended to do what it was powerless to do." Despite the broad language of the opinion, we do not regard this decision as controlling here. The present statute makes express provisions for the protection of the interest of an innocent mortgagee. And as pointed out above, the position of the owner of a vehicle is quite different from that of one who merely holds a lien thereon. Appellee also cites Lorance v. State, Texas Civ. App., 172 S.W. 2d 386, wr. ref., but the case is not in point here. The statute which was there considered expressly recognizes the right of an innocent owner to intervene and show good cause why his property should not be sold.

The power of Congress to declare the forfeiture of property rights of innocent persons in chattels used in the commission of crime has been repeatedly recognized by the federal courts. Most states which have legislated in this field make provision for the protection of both innocent owners and innocent lien claimants, but in some jurisdictions such protection is afforded to one interest or the other or to neither. We are not cited and have not found a decision from any of these states holding that a statute of the latter type is unconstitutional. In most of the cases upholding such legislation, however, the attack upon the statute appears to have been based on the due process clause of the Constitution of the United States. See Van Oster v. Kansas, 272 U.S. 465, 47 Sup. Ct. 133, 71 L. Ed. 354, 47 A.L.R. 1044; H. A. White Auto Co. v. Collins, 136 Ark. 81, 206 S.W. 748; 2 A.L.R. 1594; People v. One 1941 Ford 8 Stake Truck, 26 Cal. 2d 503, 159 Pac. 2d 641; Lindsley v. Werner, 86 Colo. 545, 283 Pac. 534; State v. Peterson, 107 Kans. 641, 193 Pac. 342, E. J. Fitzwilliam Co. Inc. v. Commonwealth, 258 Mass. 103, 154 N.E. 570; Robinson Cadillac Motor Car Co. v. Ratekin, 104 Neb. 369, 177 N.W. 337; Commonwealth v. Bowers, 304 Pac. 253, 155 Atl. 605.

The line where the police power of the state encounters the barrier of substantive due process is not susceptible of exact definition. As a general rule the power is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience as consistently as may be with private property rights. The guarantee of due process does not deprive the state of the right to take private property by the exercise of such power in a proper and lawful manner, but it is essential that the power be used for the purpose of accomplishing, and in a manner appropriate to the accomplishment of, the purposes for which it exists. A large discretion is necessarily vested in the Legislature to de-

termine not only what the interests of the public require, but what measures are necessary for the protection of such interests. If there is room for a fair difference of opinion as to the necessity and reasonableness of a legislative enactment on a subject which lies within the domain of the police power, the courts will not hold it void. See Houston & T. C. Ry. Co. v. City of Dallas, supra; Lombardo v. City of Dallas, supra; City of Coleman v. Rhone, Texas Civ. App., 222 S.W. 2d 646, wr. ref., Cooley, Constitutional Limitations, 8th ed. 1927, Vol. 2, p. 1231.

Article 725d is a measure enacted by the Legislature to curb the illegal transportation of narcotics, and thus clearly falls within the orbit of the police power. We cannot accept the idea that the forfeiture provisions were adopted simply to impose a penalty for the commission of crime. If that were the only purpose to be accomplished, no argument would be needed to show that the penalty should not be imposed upon one innocent of any offense. When the illegal act is committed by the owner of the vehicle, its forfeiture undoubtedly constitutes additional punishment for the offense, but the lawmakers were entitled to conclude that the statute would have another important effect. It is reasonable to suppose that owners will be more circumspect in permitting the use of their automobiles by others when the illegal act of the latter may bring about a forfeiture of the property. Those engaged in the drug traffic will thus find it more difficult to borrow or rent vehicles with which to carry on their business.

Although the statute produces a harsh result in the present case, drastic measures are necessary to suppress the illicit traffic in narcotics with its disastrous effects upon many members of society. The Legislature evidently decided that any provision for the protection of the property rights of innocent owners would afford an easy means of evading the law. If an automobile used in violation of the statute could be protected from forfeiture simply by proving that the legal title is in someone not connected with the offense, it is safe to assume that drugs would usually be transported in vehicles belonging to others. The difficulty of enforcing the law would thus be greatly increased and the forfeiture of the vehicle almost always evaded.

The enforcement of a law prohibiting the transportation of contraband is difficult at best, because of the ease with which automobiles may be used for that purpose without detection. Forfeiture of the property of innocent owners is a method

deemed by the Legislature necessary to restrain the commission of the offense and to aid in its prevention. As pointed out in Commonwealth v. Certain Motor Vehicle, 261 Mass., 504, 159 N.E. 613, 61 A.L.R. 548, a person who permits another to use his property voluntarily accepts the obligation of the latter to return the same. The claim may be of little or no value, but it was at one time recognized by the owner as an adequate equivalent for the property or the risk of losing it. And he is left with that claim when, through the illegal act of another, the return of the property is pervented. We cannot say that the statute under consideration is so palpably unnecessary or unreasonable as to justify our holding it void.

It should be noted that the second certified question involves only the constitutionality of Art. 725d as applied to the property rights of an innocent owner who entrusts his vehicle to another. We do not, therefore, decide whether the statute is valid in other situations.

Opinion delivered April 24, 1957.

MR. JUSTICE SMITH joined by JUSTICE GRIFFIN, dissenting.

I agree that the majority opinion does express a very harsh doctrine. I do not agree with the majority, and, therefore, respectfully file this dissent. The tentative opinion of the Court of Civil Appeals accompanying the certificate does not agree with the majority.

The provisions of Sections 5 and 6, Article 725d, Vernon's Annotated Penal Code, reads as follows:

"Sec. 5. An owner of a seized vessel, vehicle or aircraft may file a verified answer within twenty (20) days of the mailing or publication of notice of seizure. If no such answer is filed, the court shall hear evidence of violation of this Act and shall upon motion forfeit such vessel, vehicle or aircraft to the Texas Department of Public Safety, Narcotics Section. If such answer is filed, a time for hearing on forfeiture shall be set within thirty (30) days of the date of filing the answer and notice of such hearing shall be sent to all owners as prescribed in Section 4 of this Act.

"Sec. 6. If it shall appear that the owner of the vessel, vehicle or aircraft has filed a verified answer denying the use of such vessel, vehicle or aircraft in violation of this Act, then

the burden shall rest upon the State, represented by the District Attorney to prove as in other penal cases, the violation of the provisions of this Act. Provided, however, that in the event no answer has been filed by the owner of said vessel, vehicle or aircraft, the notice of seizure may be introduced into evidence and shall be prima facie evidence of said violation.

"At the hearing, any claimant of any right, title or interest in the vessel, vehicle or aircraft may prove his lien, mortgage or conditional sales contract, to be bona fide and created without knowledge that the vessel, vehicle or aircraft was to be used in violation of this Act."

These sections were adopted by amendment to the Act, and indicate a clear purpose to hold not subject to the Act all innocent owners. Section 5 expressly provides for notice to owners and a hearing. Section 6 places the burden upon the State, represented by the District Attorney of the district where the matter is pending to prove, as in other penal cases, the violation of the provisions of the Act. Why provide for notice and hearing to owners of any vehicle listed in the Act, and why have a hearing if no relief can be obtained? In our case, we are dealing with a penal statute of Texas and it is my contention that the federal rule has no application to the case at bar. The hearing necessarily is governed by the penal laws of Texas and the Act itself takes cognizance of the well known rule of innocence, and the words of Section 5 and 6 lead to but one conclusion, that conclusion being that if the State fails to discharge its burden by failing to show a violation of the Act, then, and in that event, the innocent owner would be entitled to possession of his vehicle, and the forfeiture would be denied.

A hearing was had in this case. The trial court heard the pleadings and evidence and argument of counsel and after a full trial on the question of whether or not the owner, Wayne Richards, had violated any provisions of Article 725d, supra, entered its judgment in favor of Richards and the Ridglea State Bank, who was also a defendant and was an innocent lienholder. The judgment of the Court contained the following findings:

"1. April 27, 1956, the defendant Portwood unlawfully possessed contraband narcotics which he transported in Tarrant County, Texas, by means of a 1955 Ford pick-up, 1956 license No. IB 7996, whereof the defendant Richards is the registered and real owner and the defendant Ridglea State

Bank a registered and bona fide lien holder for a debt less than the persent value of the vehicle.

"2. Portwood's possession of the vehicle was accomplished by representation to the owner, Richards, that he wished to borrow it for not more than three quarters of an hour, to drive home and change clothes. Richards' lending of the vehicle was gratuitous. He did not know Portwood possessed narcotics, and the transportation by means of his pick-up was without Richards' consent or knowledge."

It is inconceivable under the record in this case that this Court can find any sound basis for the harsh result as indicated in the majority opinion.

I think the rule announced in the case of General Motors Acceptance Corporation, 118 Texas 189, 12 S.W. 968, 970, should be applied in the present case. In that case the statute involved did not except from its operation the interest of an innocent lien holder as does the case at bar. In spite of that fact, this Court, speaking through the Commission of Appeals, interpreted the Act and held that the property of an innocent lien holder could not be forfeited. In so holding the court used language broad enough in its terms to cover a situation such as we have here, where an innocent owner is involved. In holding in favor of the innocent lien holder, the Court said:

"Manifestly, the seizure, sale, etc., are provided by way of penalty for the crime of 'unlawful transportation or storage of intoxicating liquor.' And, in our opinion, there is lack of all warrant for a supposition that a person who is entirely innocent of commission or complicity in the offense is to be punished by forfeiture of his property. The supposition is devoid of merit for at least two reasons: (a) The language of the statute, recognizing, as it does, the inherent innocence of the property itself, implies the contrary; (b) our Bill of Rights, including due process as an indispensable requisite, opposes insuperable obstacles to that species of fiat, and it cannot be supposed that the Legislature intended to do what it was powerless to do.

"We are aware of decisions to the effect that due process, in so far as guaranteed in the Federal Constitution, is not condemned in a statute designed for that purpose (see Van Oster v. Kansas, 272 U.S. 465, 47 Sup. Ct. 133, 71 L. Ed. 354, 47 A.L.R. 1044), but the actual result disclosed in the opinion cited aids demonstration of their unsoundness. Stella Van Os-

ter, against whom no charge was made, lost her property although the alleged criminal was acquitted by a jury of his peers and although the thing itself was not guilty, within the fiction of moral taint of inanimates. There was lacking the 'analogy of the law of deodand,' the element of 'negligence of the owner,' the 'goring by an ox so that he shall be stoned' and the 'falling of a thing to cause a man's death' referred to in Goldsmith, Jr. —Grant Co. v. United States, 254 U.S. 505, 510, 511, 41 Sup. Ct. 189, 65 L. Ed. 376. The opinions of the Supreme Court of the United States are entitled to great respect, but in a case like this they are not obligatory. There is to be found in Goldsmith, Jr.—Grant Co. v. United States virtually an apology for the doctrine applied in Van Oster v. Kansas and what amounts to a recognition of the impossibility of squaring the doctrine 'with accepted tests of human conduct.' Our duty includes use of independent judgment, and in its performance we cannot accept the doctrine urged. Clem v. Evans (Texas Com. App.) 291 S.W. 871, 51 A.L.R. 1135."

In the case of Lorance v. State, Texas Civ. App., 172 S.W. 2d 386, er. ref., the claimant of the automobile involved was an innocent owner who filed her claim contending that she owned the automobile and did not know it was being used or would be used by her son in the illegal transportation of intoxicating liquor and prayed that it be restored to her. Although the Court only passed on the jurisdictional question, it did reverse and remand the case for trial on this particular issue. In the course of the opinion the General Motors case, supra, was quoted at great length and apparently with approval. This Court refused a writ of error. It is my view that the same principles should govern the disposition of the present case.

The purpose of these statutes in the prohibition days was the same as it is today with narcotics, i.e., the curbing of transportation of illegal products to various parts of the United States as well as Texas. This decision today is designed to close the avenues of such transportation and the accessibility of ready markets for the harmful narcotics by way of a reasonable exercise of police power. Conceding that there is such a relation of the Act to the unlawful transportation of narcotics, there is a qualification upon the exercise of police power. That qualification is that the exercise of police power must be reasonable. The measure invoked by the Court in this instance is too drastic and only bears relation to the purpose of the Act at the tremendous expense of innocent owners of automobiles. This expense is that the innocent person's automobile is taken and

thereby extinguishing all right, title, and interest in the property. There appears no possible method by which the innocent owner could discover that the bailee was engaged in narcotic traffic unless it was a matter of common knowledge to all. No matter how careful the average owner may be, it would be impossible for him to detect the illegal product.

It is illustrated by the act itself that the Legislature intended to inject the element of innocence into its legislation. The innocent owner may well be covered by analogy to these situations in the Act itself. Although the Legislature expressly made allowance and exempted the innocent lienholder and the common carrier from the Act, it is said that there is no mention of the innocent owner and therefore must be included within the Act. The Legislature has made allowance for the innocent lienholder on the basis that he has no control over the vehicle and therefore not responsible for its use. They have also made allowance by exemption for the public carrier because they are not at liberty to refuse service to any single individual but are obligated to serve them all. It is stated that there is a difference in a lienholder and an innocent owner, but, nevertheless, there are many examples and situations in which unscrupulous individuals engaged in dope transportation could obtain immunity as far as their property is concerned under the guise of innocent lienholders. The innocent party in the situation at hand should not be punished where there is legislation such as Secs. 5 and 6 of Article 725d, supra, which clearly provides for a hearing and trial which would result in absolving the owner of all wrong.

It is evident that the Congress felt that the rule set up by the federal courts was harsh. They set up a procedure by which there could be remission or mitigation of these types of penalties. 19 U.S.C.A. 1618 and 49 U.S.C.A. 784. They provide that any person interested in any vehicle seized under the provisions of that chapter may file with the Secretary of the Treasury or Secretary of Commerce a petition for remission or mitigation of such fine or penalty. If the appeal body finds that the forfeiture was incurred without willful negligence or intention on the part of the petitioner to violate the law, he may remit as he sees reasonable and just. However, in Texas, we have no such legislation to allow an innocent person to appeal in a situation as before us today. If there were some other legislative enactment to give the innocent owner some redress, this doctrine just announced by the majority would not be so offensive. In short, what the majority has accomplished today is that the

doctrine of deodands has been revived under the guise of a reasonable exercise of police power.

In my judgment the provisions of Sections 5 and 6 of Article 725d, Vernon's Annotated Penal Code of Texas, significantly point up the element of innocence and specifically place the burden of proof upon the State, represented by the Ditsrict Attorney of the district, to prove, as in other penal cases, the violation of the provisions of this Act.

The majority opinion recognizes that the doctrine of deodand was finally discarded in England by statute, and was so repugnant to the American concept of justice that it was not included as part of the common law of this country, yet, the majority justifies that same repugnant doctrine and adopts it as the law of Texas under the guise of a reasonable exercise of police power.

The fact that the Legislature has specifically excepted innocent bona fide lien holders, common carriers, and owners whose automobiles have been unlawfully taken by the wrongdoer does not justify invoking the rule of construction that an exception makes plain the intent that the statute should apply in all cases not excepted. I rather think that the Legislature realized that it was powerless to enact a statute which would authorize the forfeiture of an automobile of an innocent owner. I do not believe it was the intention of the Legislature in passing Article 725d, Vernon's Annotated Penal Code of Texas, to permit the property of an innocent owner to be forfeited when used by another in violation of the Article. Otherwise, it would not have adopted Sections 5 and 6 by amendment. It has never been held by this or any other court in Texas that the property of an innocent owner, one who has committed no wrong, can be seized and forfeited to the State. In our case, the forfeited property goes to the Texas Department of Public Safety instead of to the King, as in the days of the doctrine of the deodand. I cannot believe that the Legislature intended to do that which it was prohibited from doing by the Bill of Rights, as set forth in Article 1 of the State Constitution.

The appellant states that the only issue for determination is whether or not the Legislature in the exercise of the general police power may provide for the forfeiture of a chattel where that property has been used for or in connection with a specified unlawful purpose or act, even though the owner thereof had no knowledge of or guilt in the unlawful act. After citing

a number of federal authorities, among them being those discussed in the Texas case of General Motors Acceptance Corporation v. State, supra, the appellant, in its brief announces that in the event we hold the Act under consideration unconstitutional, it is particularly disturbed over the prospect of a majority of narcotic cases, in which a vehicle is involved, will be handled by federal agents, and that the revenue derived from the sale of confiscated automobiles of innocent owners will go to the Federal Government instead of the State of Texas.

The appellant candidly admits that the principles underlying the doctrine of the deodand are proclaimed and sustained in the several federal cases relied upon. For example, appellant states its position to be: "The principle of forfeiture is recognized as a proceeding in rem against the chattel in which the law ascribes to it a power of complicity and guilt in the offense without regard to the position or intent of the legal owner of the property." The case of Goldsmith, Jr.-Grant Company v. United States, 254 U.S. 505, 41 Sup Ct. 189, 191, 65 L. Ed. 376, announces the principle which the majority holds was fully intended to be adopted as the law in Texas, and the one upon which appellant relies. In that case the Court said: "In breaches of revenue provisions some forms of property are facilities, and therefore it may be said, that Congress interposes the care and responsibilities of their owner in aid of the prohibitions of the law and its punitive provisions, by ascribing to the property a certain personality, a power of complicity and guilt in the wrong. In such case there is some analogy to the law of deodand by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited. To the superstitious reason to which the rule was ascribed, Blackstone adds 'that such misfortunes are in part owing to the negligence of the owner, and therefore he is properly punished by such forfeiture'. And he observed, 'A like punishment is in like cases inflicted by the Mosaical law: "if an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten." And, among the Athenians, whatever was the cause of a man's death, by falling upon him, was exterminated or cast out of the dominions of the republic.' " This doctrine was rejected in Parker-Harris Co. v. Tate, 135 Tenn. 509, 188 S.W. 54. In that case the court said, in part:

"In this state, we have a positive denunciation of its principle [deodand doctrine] firmly imbedded in the fundamental law. * * *.

If appellant is invoking the doctrine of deodand, seemingly it implies that the Legislature lacks that fidelity to logic and judicial morality exhibited by the Athenians and the children of Israel. Those ancients at least were consistent. Under their law the guilty thing, whether it was the unreasoning ox or the inanimate brick, was destroyed. No alchemy of sale transmuted its character and restored it to its former position of social resepctability. Although the deodand doctrine does not appear to be by our Constitution expressly eliminated from our jurisprudence, we do not think that it has ever been adhered to in this State, and we believe that the forfeiture of the property of an innocent owner must rest upon a more substantial ground than the "fiction of moral taint of inanimates."

If it was the intention of the Legislature that the property of an innocent owner of an automobile should be forfeited as held by the majority, then that portion of Article 725d, supra, upon which the State relies, is void because it is in violation of the State Constitution. Article 1, Section 19, of the Constitution, provides that "No citizen of this state shall be deprived of life, liberty, property or immunities, or in any manner disfranchised, except by the due course of the law of the land." And Section 29 of the same Article reads: "To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, * * * shall be void."

The people must be protected in their property rights as provided in the Constitution. The Legislature has no authority to transgress upon the right of a citizen, who has committed no wrong. He has the right to acquire and own property, and to use it as he pleases so long as his act in such use harms no one, and so long as his permissive use by others of his property is innocently authorized. In the case of Spann v. City of Dallas, 111 Texas 350, 235 S.W. 513, 515, 19 A.L.R. 1387, this court said:

"* * * In our Constitution the liberties protected by the Bill of Rights are, by express provision, 'excepted out of the general powers of government.' It is declared that they 'shall forever remain inviolate,' and that 'all laws contrary thereto shall be void.'

"To secure their property was one of the great ends for which men entered into society. The right to acquire and own

property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty—an expression of his freedom, guaranteed as inviolate by every American Bill of Rights."

*"It is not a right, therefore, over which the police power is paramount. Like every other fundamental liberty, it is a right to which the police power is subordinate."*

The law of the land means the general law. It means that a citizen shall hold his liberty, life, property and immunities under the protection of the general rules of society. See Cooley's *Constitutional Limitations,* Sixth Edition, p. 431. An enactment of the Legislature may not be "the law of the land." Certainly it is not when the enactment is under a power which has been "excepted out of the general powers of government."

I would answer both certified questions in the negative.

Opinion delivered April 24, 1957.

MR. JUSTICE GRIFFIN joined by JUSTICE BREWSTER, dissenting.

In this case this Court has a choice of two courses of action and each has some authority to support it. These two courses of action are; first, to forfeit the property of an admittedly innocent owner having no connection at all with the violation of the narcotic laws. This course the majority has chosen to follow. The second course is to hold that the rights of an innocent owner can be protected and cannot be forfeited.

I prefer to follow the second course, especially in view of the authority of General Motors Acceptance Corporation v. State, 1929, 118 Texas 189, 12 S.W. 2d 968, wherein this court specifically refused to accept the doctrine of the cases relied upon by the majority. Also the case of Lorance v. State, Texas Civ. App., 1943, 172 S.W. 2d 386, writ refused.

For the reasons cited, I join in the dissent herein.

Opinion delivered April 24, 1957.