# IN THE SUPREME COURT OF TEXAS

═══════════════
No. 12-0657
═══════════════

ASHISH PATEL, ANVERALI SATANI, NAZIRA MOMIN, MINAZ CHAMADIA,
AND VIJAY LAKSHMI YOGI, PETITIONERS/CROSS-RESPONDENTS,

v.

TEXAS DEPARTMENT OF LICENSING AND REGULATION, ET AL.,
RESPONDENTS/CROSS-PETITIONERS

═══════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════

JUSTICE BOYD, concurring in judgment.

I concur in the Court's judgment but do not fully agree with its reasoning. Specifically, I do not agree with the Court's adoption of a new alternative test under which the Texas Constitution's "due course of law" provision invalidates any law that is "so unreasonably burdensome that it becomes oppressive in relation to the underlying governmental interest." *Ante* at ___. Nevertheless, I conclude that the Texas statute requiring the petitioners—who merely remove superfluous hair using tweezing techniques—to obtain an esthetician's license is arbitrary and unreasonable, and therefore oppressive, because it has no rational relationship to a legitimate government interest.

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Under our precedent, this guarantee "contains both a procedural component and a substantive component." *Barshop v. Medina Cnty.*

*Underground Water Conservation Dist.*, 925 S.W.2d 618, 632 (Tex. 1996). The issue here is whether requiring the petitioners to obtain an esthetician's license as a condition for practicing their trade of eyebrow threading violates their substantive rights to liberty, property, privileges, or immunities without due course of law.

As the Court notes, this Court has "not been entirely consistent" in its articulation of the standard by which we review the constitutionality of economic regulations under the due course of law provision. *Ante* at ___. Through the years, for example, we have variously said that laws are presumed to be constitutional and a law is invalid only if:

- it is "unreasonable and in contravention of common right," *Milliken v. City Council of Weatherford*, 54 Tex. 388, 394 (1881);

- it invades rights "without justifying occasion, or in an unreasonable, arbitrary, and oppressive way," *Hous. & Tex. Cent. Ry. Co. v. City of Dall.*, 84 S.W. 648, 653 (Tex. 1905);

- it is not "sufficiently rational and reasonable," *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995);

- it has "no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense," *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 938 (Tex. 1998) (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88 (1928));

- it is not "designed to accomplish an objective within the government's police power and [no] rational relationship exists between the ordinance and its purpose, *id.*;

- the "enacting body could [not] have rationally believed at the time of enactment that the ordinance would promote its objective," *id.*;

- it is not "at least fairly debatable that the [Legislature's] decision was rationally related to legitimate government interests," *id.*; or

- it is "*clearly* arbitrary and unreasonable," *id.*

These precedents illustrate the difficulty the Court has had articulating the appropriate standard. I would read our prior descriptions together, to provide that a law violates the substantive due course of law provision only if it is arbitrary and unreasonable, and therefore oppressive,

because it has no rational relationship to a legitimate government interest. The Court, by contrast, holds that a law is invalid if its "purpose could not arguably be rationally related to a legitimate governmental interest" or "when considered as a whole, [its] actual, real-world effect as applied to the challenging party could not arguably be rationally related to, *or is so burdensome as to be oppressive in light of*, the governmental interest." *Ante* at ___ (emphasis added). In other words, the Court holds that a law is invalid if it is "burdensome" and "oppressive in light of" the legitimate governmental interest, even if it is rationally related to that interest. As the CHIEF JUSTICE notes in his dissent, "[n]either this Court nor any other the Court can find has ever used 'oppressive' as a test for substantive due process." *Post* at ___; *see Hous. & Tex. Cent. Ry. Co.*, 84 S.W. at 653 (holding Constitution prohibits laws that invade substantive rights "without justifying occasion, or in an unreasonable, arbitrary, and oppressive way," not "*or* oppressive way").

I agree that the Court's new burdensome/oppressive standard is "loose"—too "loose," in fact, to be useful in our analysis of these types of constitutional challenges. *See post* at __ (Hecht, C.J., dissenting). Determining what "burdensome" or "oppressive" means in this context will be nigh impossible, unless we use those terms, as we have in our prior opinions, to refer to the burdens that result from a law that is not rationally related to a legitimate government interest. Like JUSTICE GUZMAN, "I have significant doubts that this standard is workable in practice." *Post* at ___. And like both dissenting Justices, I believe the burdensome/oppressive standard makes it too easy for courts to invalidate regulations for their own personal policy reasons. *See post* at __ (Hecht, C.J., dissenting); *post* at __ (Guzman, J., dissenting). Because, as JUSTICE GUZMAN notes, courts cannot and should not "legislate from the bench," *post* at ___, the bar should be set very high, to ensure that it is indeed the Constitution, and not merely a court, that invalidates a law.

3

But the bar cannot be insurmountable, and if the application of any regulatory licensing scheme were ever constitutionally invalid, this one is. I need not repeat my colleagues' descriptions, because everyone (including the State and both dissenting Justices) agrees that requiring eyebrow threaders to complete the current requirements necessary to obtain an esthetician's license "is obviously too much." *Post* at ___ (Hecht, C.J., dissenting); *post* at ___ (Guzman, J., dissenting). Certainly, "[i]f there is room for a fair difference of opinion as to the necessity and reasonableness of a legislative enactment on a subject which lies within the domain of the police power, the courts will not hold it void." *State v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957). But there is no difference of opinion here: requiring eyebrow threaders to obtain an esthetician's license is neither necessary nor reasonable. Requiring them to obtain training in sanitation and safety is rational, but requiring them to get an esthetician's license is not.

The CHIEF JUSTICE suggests that "there is . . . evidence from which the Legislature could reasonably conclude that the required instruction and testing would further its goal of protecting public health and safety through the regulation of cosmetology." *Post* at ___. I agree that protecting public health and safety is a legitimate government interest, but I do not agree that requiring eyebrow threaders to meet the current requirements for obtaining an esthetician's license is *rationally* related to achieving that interest. Under the dissenting Justices' approach, if the Legislature decided to require eyebrow threaders to obtain a medical license, we would have to uphold that decision because that licensing scheme also "instruct[s] in general sanitation and safety practices." *Post* at ___ (Hecht, C.J., dissenting).

It may be convenient to impose the existing esthetician licensing scheme on eyebrow threaders, but in my view it is also arbitrary and unreasonable, and therefore oppressive, because doing so is not rationally related to the legitimate government interest in promoting public health

and safety. Courts should not second-guess the Legislature, but in the end, as the CHIEF JUSTICE agrees, "the final authority to interpret and apply the Constitution belongs to the Judiciary[.]" *Post* at ___. Although that authority is "not lightly to be exercised," *post* at ___ (Hecht, C.J., dissenting), the Court is right to exercise it here.

       I therefore concur in the judgment.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 26, 2015