[L. A. No. 12429. In Bank.—September 27, 1932.]

PACIFIC READY CUT HOMES, INC. (a Corporation), etc., Appellant, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation) et al., Respondents.

Andrew J. Copp, Jr., for Appellant.

Walter L. Case, *in pro. per.*, Walter H. Hewicker, Louis, Quillan & Pool, A. W. Staples, Howard B. Henshey and Louis E. Kearney for Respondents.

THE COURT.—This is an action to subject the unexpended balance of a building loan to an equitable lien in favor of a materialman. Defendants A. W. Menkins and Violet Menkins, his wife, were owners of a lot, upon which they desired to erect an apartment house. They secured a loan of $16,000 from defendant Meline Bond and Mortgage Company, secured by a first deed of trust on the property, recorded June 26, 1928. Two other trust deeds in the amount of $6,000 each were also recorded in favor of other persons, on July 23, 1928. These instruments were all recorded prior to the commencement of the work and were therefore prior to mechanics' liens. During the period of construction a number of payments were made to laborers and materialmen, including plaintiff. In March, 1929, the building was completed. The amount then due plaintiff was $2,705.04. Further sums for labor and materials were owing to other parties. The balance of the loan, $3,535.63, was insufficient to cover them all. Plaintiff and other claimants filed liens against the building. The defendant mortgage company thereupon, as permitted by its loan contract with the owners, kept the said balance, using it to reduce the amount of the principal and interest due on the loan. Thereafter the owners defaulted, and defendant Title Insurance and Trust Company, trustee under the first deed of trust, elected to sell the property. Plaintiff then commenced this action to enjoin the sale and to subject the unexpended balance in the loan fund to a lien in its favor. Other mechanics' lien claimants were joined as defendants.

The encumbrances, i. e., the first, second and third deeds of trust, were greater than the value of the property, with the result that the mechanics' liens were worthless.

The theory of plaintiff was that it had relied upon the loan in extending credit to the owners, and that the facts of the case were such as to justify the imposition of the

lien under the rule of *Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496 [271 Pac. 898]. In this latter case, Smith, the owner of certain land, was given a building loan of $20,000 by Anglo-California Securities Company, secured by a deed of trust. An account was opened in Smith's name and the necessary sums were paid to him as the work progressed. Shortly after completion of the building Smith died. A balance of $4,090 remained undisbursed in the account. Smith's administratrix brought suit to recover this sum, and claimants of mechanics' liens totaling $5,633.30 also demanded the money, their liens being valueless because of the priority of deeds of trust. This court held that the said sum should be charged in equity with a lien and distributed *pro rata* among the lien claimants. We there said (p. 502) : ''That the lien claimants must have relied upon the fund to be advanced to Smith by the securities company, and not alone upon the individual capacity of Smith or their right to a last lien upon the premises, as a means of obtaining payment for their labor and materials, is supported by every reasonable inference deducible from the surrounding circumstances. Smith was engaged in building upon land for which he had not paid the purchase price and which was charged with and subject to the several deeds of trust executed and delivered to secure the entire purchase money. The incapacity of Smith to build without a prearranged loan was emphasized by the existence of these purchase-money encumbrances and attested by the agreement with the securities company for a loan to be used expressly for building purposes. It is also reasonably apparent from the record herein that this loan could not have been obtained without giving the deed of trust for its security priority over the purchase-money deeds of trust. Moreover, the record tends to show that the houses for the construction of which the building loan account was opened have been completed in substantial compliance with the plans and specifications submitted to the securities company in connection with the application for the loan. It requires very little showing, therefore, to produce the conclusion that without confidence in the payment to Smith of the full amount of the loan contracted for the lien claimants would not have extended credit for their labor and materials. The reasonableness of such expectations on the part of the lien claim-

ants must, naturally, have suggested itself both to Smith and the securities company. They should have known that the consummated agreement for the money to be advanced to or on behalf of Smith as the buildings progressed, under a deed of trust taking priority over the statutory liens available to those contracting with him or the general contractor, would constitute a material inducement to them in supplying labor and materials. As if in express recognition of the reasonableness of these expectations, the practice was to make payments from, or withdrawals upon, the building loan account only as the work progressed and after the. appraiser for the securities company had, in the line of his duty, reported progress warranting a payment . . . Smith and the securities company by their conduct may be said to have induced, or contributed to induce, the lien claimants to enhance the value of the real property by their labors and materials, and it would be inequitable and unjust, it seems to us, to permit Smith or his personal representative to withhold, at this time, any part of the fund upon which the lien claimants must surely have relied for reimbursement. The fact that the real property itself has proved of but little value upon sale under the purchase-money deeds of trust lends added support to this conclusion.''

█ The Smith case, as appears from the foregoing quotation, was decided upon the dual grounds that the owner and the lender were estopped by their conduct to withhold the fund, and that the claimants had an equitable lien thereon. The essential basis of the opinion is the justifiable reliance upon the fund by the lien claimants. If similar reliance appears in the instant case, the former decision is controlling.

The trial court found, in substance, that plaintiff in supplying its materials relied solely upon the personal credit of defendant owners, and not upon any representations or conduct of defendant mortgage company; and that the latter defendant made no representations and did nothing to influence the furnishing of the materials. We are of the opinion that these findings are not supported by the record. Witnesses for plaintiff included H. F. Hopkins, credit manager, B. R. Simms, the salesman who solicited the contract, and H. W. Simmons, collector. The sole witness for defendant mortgage company was J. T. Zeeman, in charge of its

escrow department. Defendant suggests that the court believed its witness and disbelieved contrary statements of plaintiff's witnesses. However, disregarding all evidence upon which there is conflict, the following facts appear from the testimony: The defendant owner requested plaintiff to furnish materials for the job, and plaintiff proceeded to investigate, first, the credit of said defendant, and, second, the encumbrances on the property. Discovering that the owner was insolvent and that the property was burdened with an indebtedness in excess of its value, plaintiff refused to take the contract. The defendant owner then informed plaintiff that a building loan had been obtained from the mortgage company and that materials and labor would be paid for out of the fund derived from said loan. Witnesses for plaintiff testified that they checked this fact by several conversations with Zeeman, and the latter admitted having one phone conversation with Hopkins to this effect. The deed of trust evidencing the loan was on record, and this was checked by Hopkins. During the progress of the work several payments were received by plaintiff from Zeeman, i. e., from the escrow. Zeeman himself testified that in a conversation with Simms and the owner he said that the mortgage company would pay plaintiff after satisfactory completion if there remained enough money to cover the other claims; and that in another conversation with Simms just after completion of the building he said that the company would pay all claims against the job if the various laborers and subcontractors would prorate their claims.

Despite the denial of Zeeman that any promise was made, prior to completion of the building, to pay any of the claims, the evidence set forth above brings this case clearly within the rule of *Smith* v. *Anglo-California Trust Co., supra.* There was in that case no greater evidence of justifiable reliance upon the fund than appears herein. The distinguishing facts of the two cases are not, in our opinion, significant. The principal difference urged by defendant is that in the Smith case the conflict was between the administratrix of the borrower and the lien claimants, while in the instant case the borrower, Menkins, makes no claim to the balance. It may be noted that here, by the application of the balance to the reduction of the loan, the borrower profited. However, the equitable considerations are identical

with those presented in the former case. The defendant mortgage company, having received the benefit of plaintiff's performance in the form of a completed building and therefore a more valuable security for its note, is not justified in withholding or appropriating to any other use money originally intended to be used to pay for such performance, and relied upon by plaintiff in rendering its performance. The theory of equitable lien, as laid down in the Smith case, is quite broad (see 17 Cal. L. Rev. 411), and it is fully applicable to the instant case. (See, also, *Community Lumber Co.* v. *Chute,* 215 Cal. 268 [10 Pac. (2d) 57]; *Community Lumber Co.* v. *California Pub. Co.,* 215 Cal. 274 [10 Pac. (2d) 60].)

The judgment is reversed, with directions to the lower court to make findings and enter judgment in favor of plaintiff in accordance with the views expressed in this opinion.

Rehearing denied.