[Civ. No. 15676. First Dist., Div. One. Jan. 20, 1954.]

THE PEOPLE, Respondent, v. ONE 1951 FORD SEDAN, Engine No. BIRH110022, Defendant; BARRETT GARAGES, INC., Appellant.

Sullivan, Roche, Johnson & Farraher for Appellant.

Edmund G. Brown, Attorney General, Ralph W. Scott and Charles A. Barrett, Deputy Attorneys General, for Respondent.

PETERS, P. J.—This appeal presents the following question: Can the state forfeit the interest of an owner of an automobile where the owner rents the automobile to a bailee, who, in turn, entrusts it to a malefactor, who uses the car, illegally, and contrary to the terms of the rental agreement, to transport narcotics? The trial court answered this question in the affirmative and forfeited the interest of the registered and legal owner, who is the intervener. The intervener appeals.

The appeal comes to us on a settled statement. In addition, the trial court wrote a memorandum opinion that is included in the record. The settled statement shows that the intervener, Barrett Garages, Inc., is in the business of renting automobiles to the public. On August 21, 1951, it rented the car in question, pursuant to the terms of a written agreement, to one Lena Stockton. The rental agreement provided that Lena was to return the car by 10 a. m. of August 22, 1951, and that failure to do so amounted to an *"unauthorized use and fraudulent concealment* of the motor vehicle." It was also provided that "Permission to drive and use the motor vehicle is limited exclusively to Rentee, or his duly authorized employee, unless written consent of Owner is endorsed hereon." The rentee further agreed that the vehicle should not be used "For any illegal purpose," or "In violation of any law or ordinance."

Lena, without the knowledge or consent of the owner, loaned the car to one Quincy Proctor. On August 25, 1951, while the vehicle was still subject to the rental agreement, Proctor used it to transport marihuana, and was arrested.

The precise status of Proctor does not appear in the settled statement where it is merely declared that Lena "loaned and permitted a third party," Proctor, to operate the vehicle. The state argues that Proctor may have been an "employee" of Lena's within the terms of the contract. In his memorandum opinion the trial judge stated that in violation of the rental agreement Lena "loaned the car to a friend of hers."

While the opinion of the trial court cannot be used to impeach the findings, it can be used to explain them. (*Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740 [47 P.2d 273].) Here the "loaned the car to a friend" phrase in the opinion does not contradict or impeach the phrase "loaned and permitted a third party" to use the car appearing in the settled statement, but explains that phrase. Thus, we must assume that Proctor was not the employee of Lena.

The trial court found all of the requisite facts in reference to Proctor's being in control of the vehicle and in possession of narcotics when he was arrested on August 25, 1951, and the facts in reference to intervener's being the registered and legal owner. The court then found that intervener on August 21, 1951, did "voluntarily entrust the possession of the defendant vehicle to one Lena Mae Stockton who, in turn, voluntarily entrusted the possession of said vehicle to . . . Quincy Proctor without the knowledge or the consent of the said intervener." The court concluded that under such circumstances the interest of the intervener in the vehicle should be forfeited. We agree with this conclusion.

The constitutionality of statutes forfeiting the interest of innocent owners or lienholders in vehicles used to transport narcotics even where used by the borrower contrary to the instructions of the owner, is now beyond question, and is not seriously challenged on this appeal. (See *Van Oster* v. *Kansas,* 272 U.S. 465 [47 S.Ct. 133, 71 L.Ed. 354].) The only question presented is whether our statutes, properly interpreted, purport to forfeit the interest of the registered owner in a case where he entrusts the vehicle to a bailee, who, in turn, in violation of the bailment agreement, entrusts it to a malefactor, who uses the vehicle to transport narcotics.

There can be no doubt that the California statutes provide that the interest of the owner shall be forfeited whenever the vehicle is used to transport narcotics illegally. Section 11610 of the Health and Safety Code provides: "A vehicle used to unlawfully transport any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed, or in which any narcotic is unlawfully possessed by an occupant thereof, shall be forfeited to the State."

The next few sections provide for the procedural steps necessary to be followed to secure a forfeiture, and for notice to owners and others, and then provides in section 11619 for the defenses that may be asserted by owners in such a proceeding. That section provides: "At the hearing any owner who has a verified answer on file may show by competent evidence that the vehicle was not used to transport narcotics, or that narcotics were not unlawfully possessed by an occupant of the vehicle."

It should be noted that this section referring to owners is substantially different from section 11620 which provides for the special defenses available to a lienholder. ▓ If the interest of the lienholder was created after "reasonable inves-

tigation'' of the ''moral responsibility, character, and reputation'' of the purchaser, the lienholder's interest is not subject to forfeiture. ■ The ''reasonable investigation'' defense allowed lienholders, is, by necessary implication, denied to owners. As to them, the only defenses allowed by the statutes are that the vehicle was not in fact used to transport narcotics or that narcotics were not unlawfully possessed by an occupant. (*People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556, 560 [201 P.2d 402].) In addition, the courts, in order to preserve the constitutionality of these statutes under due process, have read into them an additional defense, namely, that the owner is protected if the vehicle is taken from him without his knowledge or consent. (*People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503 [159 P.2d 641] ; *People* v. *One 1941 Chrysler Tudor,* 71 Cal.App.2d 312 [162 P.2d 653] ; *People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556 [201 P.2d 402].) ■ The burden of proof to show lack of consent is on the owner. (*People* v. *One 1939 La Salle 8 T. Sedan,* 45 Cal.App.2d 709 [115 P.2d 39] ; *People* v. *One 1937 Plymouth 6 4-Door Sedan,* 37 Cal.App.2d 65 [98 P.2d 750].) ■ A limited or qualified consent, or the fact that the bailee exceeded the limitations of the permission granted, is not sufficient to raise this exception. (*People* v. *One 1941 Chrysler Tudor,* 71 Cal.App.2d 312 [162 P.2d 653] ; *People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503 [159 P.2d 641] ; *People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556 [201 P.2d 402].)

■ The appellant in the instant case tries to bring itself within the lack of consent exception by a somewhat ingenious argument. It admits that it voluntarily entrusted possession of the vehicle to Lena, but it contends that the use of the car by Proctor was without its consent, and that such use by him constituted the felony of taking a car without the owner's consent as defined by section 503 of the Vehicle Code. That section provides that ''Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in any such driving or unauthorized taking or stealing is guilty of a felony. . . .''

Appellant argues that, since the rental agreement prohibited the bailee, Lena, from allowing anyone other than Lena *or*

her employee from driving the car without the consent of appellant, when Proctor, not an employee, drove the car with the consent of Lena, since appellant had not consented and did not know that the vehicle had been loaned to him, Proctor was guilty of a felony in operating the vehicle. It is argued that if the car had been stolen from Lena and the thief had used it to transport narcotics, the owner would have a defense to the forfeiture action, and that Proctor was legally a thief under section 503, *supra*. Appellant seeks to fortify this argument by the provisions of the contract of rental that if Lena kept the car beyond 10 a. m. on August 22, 1951, her continued possession would be "unauthorized," would constitute a "fraudulent concealment" of the vehicle, and by those provisions prohibiting Lena from using the car for illegal purposes.

The argument is unsound. There is nothing in the record to show that Proctor acted with "intent to either permanently or temporarily deprive the owner" of his title to or possession of the vehicle. There is no showing that Proctor knew of the terms of the rental agreement. ■ A breach of the rental agreement by Lena does not prove an intentional criminal act on the part of Proctor, who drove the car with her permission. In the absence of knowledge of the terms of the rental agreement Proctor cannot be held guilty of a felony because Lena violated the terms of that contract. In order to constitute a felony under section 503 of the Vehicle Code there must exist the specific intent to deprive the true owner of title to or possession of the vehicle. (*People* v. *Sanchez*, 35 Cal.2d 522 [219 P.2d 9].) ■ While an "intent to steal" need not exist, the intent to "permanently or temporarily deprive" the owner of title to or possession of the vehicle must be shown. The two concepts are not identical. There is nothing in the record to show that Proctor knew that he was interfering with the right of possession of the owner. Certainly, therefore, the record does not show that he could have had the intent to interfere with that possession. It therefore follows that the provisions of the contract between appellant and Lena have no relevancy at all to the basic problem here presented, which is whether a vehicle may be forfeited under our statute where the owner entrusts it to a bailee, who, in turn, entrusts it to a malefactor, who uses the car to transport narcotics.

The problem is one of interpretation, not of constitutionality. By no reasonable interpretation of the statutes can the

exception claimed by appellant be found in the language of the statutes. But what appellant is really asking is that this court extend the court-created defense of lack of consent, to include a case where consent is given to A, who entrusts to B, who uses the car illegally. The same reasons do not exist that made it necessary to imply the consent exception as to A. It was felt that it would be a denial of due process to forfeit the interest of the owner where the malefactor was using the car without the consent of the owner. But once the owner grants permission to someone to use his automobile, he knows or should know that such person may allow someone else to drive the car. By parting with possession voluntarily he has placed the automobile in circulation and made it possible for it to be used to transport narcotics. As was said in *People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556, at page 561 [201 P.2d 402] : ''The owner parts with *possession* at his peril.'' Where the owner has parted with possession voluntarily the Legislature has seen fit to provide that if the car is used illegally the interest of the owner shall be forfeited. The Legislature has determined that the use of a motor vehicle to transport narcotics is such an evil, and is so socially undesirable, that an owner surrenders possession at his peril. It has provided that if the *taking* is with the owner's consent, his interest will be forfeited if the car is *used* illegally regardless of whether the owner consents to such *use* or even directs that it not be so *used.* It is not for the courts to revise this statute by creating exceptions not provided by the Legislature or compelled by constitutional restraints.

There is no doubt some confusion in the cases as to how forfeiture statutes shall be applied in the sub-borrower situation. The confusion seems to stem from some ambiguous language used by the United States Supreme Court in *J. W. Goldsmith, Jr.-Grant Co.* v. *United States,* 254 U.S. 505 [41 S.Ct. 189, 65 L.Ed. 376]. There the United States successfully sought to forfeit the interest of a conditional vendor where the vehicle was used to transport whiskey on which no tax had been paid. In meeting certain objections made by the appellant to this rule, the court stated (p. 512) : ''And we also reserve opinion as to whether the section can be extended to property stolen from the owner or otherwise taken from him without his privity or consent.'' It will be noted that the court carefully used the word ''taken'' from the owner without his consent, and did not employ the word ''used'' with-

out his consent. It will also be noted that this case did not involve the problems arising out of the use of a vehicle by a sub-borrower, but involved illegal use by a conditional vendee. The quoted language simply kept open for consideration the question as to what the rule might be if the vehicle were "taken" from the owner without his consent, and then used illegally. At most, the language might indicate a doubt that a vehicle taken by a sub-user from a borrower without the knowledge or consent of the owner or borrower could be forfeited if the sub-user used it illegally. Subsequent to this decision, the courts created the lack of consent exception under which the owner's interest could not be forfeited if the vehicle was taken from the owner without his consent. Some courts, following the broadest implications of the language quoted, *supra*, from the Goldsmith-Grant Co. case, have extended the consent exception to situations where the owner consents to the use of the vehicle by A, and the car is used illegally by B, who took it from A without his knowledge or consent, or without the knowledge and consent of the owner. This would seem to be a proper extension of the doctrine. Thus, in *United States* v. *One Buick Roadster,* 280 F. 517, a District Court case, a conditional vendee, not entitled to possession, surreptitiously took a vehicle from the vendor's repairman and used it illegally. It was held that the conditional vendor's interest could not be forfeited, because the taking from the bailee was without his knowledge or consent and the user was, therefore, a trespasser. (See, also, *United States* v. *One 1938 Chevrolet Coach Automobile,* 78 F.Supp. 676.)

There is at least one case, however, that is directly in point in supporting appellant's contentions, and that is the case of *United States* v. *One Reo Speed Wagon,* 5 F.2d 372, a District Court decision. There a father entrusted a vehicle to his son for a definite purpose. The son, contrary to instructions, loaned the vehicle to a friend who was arrested while transporting contraband. The court held that since the father had not entrusted the vehicle to the malefactor and had not authorized his son to so entrust it, the vehicle was not being *"used"* with the knowledge and consent of the father, and that the lack of consent exception applied. Thus was the term "taken," employed in the Goldsmith-Grant Company case, converted into the word "used." The District Court was affirmed by the Circuit Court of Appeals under the title of *United States* v. *Almeida,* 9 F.2d 15, in an ambiguous opinion, in which the court first held that it did "not regard the

question as before us'' that is here involved, gave an alternative ground for refusing a forfeiture, and then went on to approve the rule that where a borrower entrusts the vehicle to a sub-borrower without the knowledge of the owner, the latter's interest cannot be forfeited. The sub-borrower in such a situation is referred to as a ''trespasser'' and as a ''thief,'' so far as the owner is concerned. This portion of the opinion is weakened by the fact that the cases cited by the court involved situations where the *original* user took the vehicle improperly from the owner, and did not involve the problem of the use by a sub-borrower at all. Strangely enough, one of the principal cases cited and relied upon by the Circuit Court in its opinion is *United States* v. *One Saxon Automobile*, 257 F. 251 [168 C.C.A. 335], a Circuit Court decision, in which it was held that the interest of a lienholder could be forfeited where the purchaser in possession loaned the car to a friend who used it to transport liquor on which no tax had been paid—a holding directly contrary to the rule for which it is cited in the Almeida case. The strangest part of the Almeida decision is that it quotes the following from the Saxon case (9 F.2d at p. 16) : '' 'This rule of construction has been extended without dissent to protect the innocent owner of property from forfeiture, even when provided by a statute which expresses no limitation or exemption of any kind, where the property has been taken by a trespasser or a thief, or the owner has been deprived of the possession by forces of nature beyond his control. This is for the reason that no right of possession or custody can be acquired by or from a trespasser or thief, or by virtue of the forces of nature against the will of the owner. In such case, the owner of the property has never in a legal sense parted with any right of custody or possession, and hence no statute can operate against his title by reason of the use or custody or possession of the thief or trespasser, or his deprivation of it by the forces of nature.' '' But the court failed to mention the very next sentence which contains the actual holding of the Saxon case. It reads as follows (257 F. at p. 252) : ''This reasoning obviously does not apply when the owner voluntarily parts with his possession and intrusts his ship or vehicle to another, for in that case the owner is charged with knowledge that the person to whom he has relinquished possession, or some one acquiring the possession from him, may so use the property as to defeat the collection of the revenue, and

thus bring it under the condemnation of forfeiture." Thus, the Almeida case is, at best, a most questionable authority.

There are at least two other federal cases that have refused to follow the rule of the Reo-Almeida cases. Both of these cases involved situations where the owner entrusted the vehicle to his child, who, contrary to instructions, loaned it to a malefactor, who used it for an illegal purpose. The first of these is *United States* v. *One Lincoln Touring Car*, 11 F.2d 551, a District Court decision, that expressly held that the court in the Reo case had misinterpreted the reservation of the Goldsmith-Grant Co. case, and further held that a vehicle loaned to a sub-borrower by a borrower, even contrary to instructions of the owner, was not "taken" from the owner without his consent but merely was being "used" without his consent. The second case is *United States* v. *One Dodge Truck*, 9 F.Supp. 157, in which another District Court, in a carefully considered decision reviewing most of the federal authorities, expressly refused to follow the Circuit Court decision in the Almeida case. The court carefully, and at length, discusses the reservation in the Goldsmith-Grant Co. case and holds that it only applies to a case where the vehicle is "taken" from the owner or the borrower without consent. But if the vehicle is loaned to a borrower, who in turn entrusts it to a sub-borrower, even contrary to the owner's instructions, the interest of the owner will be forfeited. These cases are far more persuasive than the opinions in the Reo-Almeida cases.

There is no California case directly in point. ▇▇▇ There can be no doubt at all that, where the owner entrusts the vehicle to a borrower, who uses the car, contrary to the terms of the bailment, for an illegal purpose, the interest of the owner will be forfeited. (*People* v. *One 1937 Plymouth 6 4-Door Sedan*, 37 Cal.App.2d 65 [98 P.2d 750]; *People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503 [159 P.2d 641]; see, also, *People* v. *One 1949 Cadillac Conv. Coupe*, 113 Cal. App.2d 115 [247 P.2d 848].) ▇▇▇ It is also clear that a taking from the owner without his consent, or the possession of narcotics by a passenger unknown to the owner or borrower are beyond the pale of permissible forfeiture. (*People* v. *One 1941 Buick Sport Coupe*, 28 Cal.2d 692 [171 P.2d 719].) It is also true that the Reo case was cited with approval in *People* v. *One 1937 Plymouth 6 4-Door Sedan*, 37 Cal.App. 2d 65, at page 70 [98 P.2d 750], but that case simply involved an unauthorized taking of a car from the owner by her son.

There was no problem of a sub-borrower involved at all. There, the taking of the car by the son, under the facts, was a direct violation of section 503 of the Vehicle Code.

██ The California cases have strictly limited the consent exception to cases where the *taking* from the owner, not the *use* of the vehicle, was unauthorized, and have emphasized that forfeiture must result where there was an original entrustment by the owner. In such cases the owner surrenders his control of the vehicle at his peril. This theory was stated as follows in *People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503, at page 507 [159 P.2d 641]:

"But there are no constitutional impediments to a forfeiture where the owner entrusts his vehicle to another who uses it illegally, even though the owner does not know of or acquiesce in such use. The distinction between such a situation and the plight of an automobile owner who failed to give possession of his car or consent to its operation is based upon the means by which the one found transporting the contraband obtained the vehicle. An owner who entrusts the possession of his vehicle to another thereby accepts the risk that it will be used contrary to law, but, in the operation of an automobile without the owner's consent to do so in any manner or at all, there is no element of choice or volition and a complete lack of permission, express or implied, on the part of the owner. . . .

"Applying the same reasoning in the present case it follows that no constitutional prohibition requires that the Health and Safety Code be construed as contended for by the appellant. Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded." (See, also, *People* v. *One 1941 Buick Sport Coupe,* 28 Cal.2d 692 [171 P.2d 719]; *People* v. *One 1940 Chrysler,* 77 Cal.App.2d 306 [175 P.2d 585]; *People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556 [201 P.2d 402].)

██ Under these authorities, and for the reasons already stated, the entrustment rule must be held to extend to a

taking by a sub-borrower with the consent of the borrower, even where the sub-use is contrary to the instructions of the owner, and the consent exception must be limited to an unauthorized taking from the owner or borrower.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 17, 1954. Carter, J., was of the opinion that the petition should be granted.