[Civ. No. 22151. First Dist., Div. One. May 5, 1966.]

JOHN C. McBAIN et al., Defendants and Appellants, v. SANTA CLARA SAVINGS & LOAN ASSOCIATION, Defendant and Respondent.

Mezzetti & McDiarmid, Mezzetti & Aguilar, Robert L. Mezzetti, Elva Soper Aguilar and Robert P. Aguilar for Defendants and Appellants.

Christy, Costello, Hoffman & Premo and Eugene M. Premo for Defendant and Respondent.

McKenna & Fitting and Aaron M. Peck as Amici Curiae on behalf of Defendant and Respondent.

SULLIVAN, P. J.—This is an appeal from a judgment entered in an action for declaratory relief determining that certain unpaid subcontractors and materialmen were not entitled to the unexpended balance of a construction loan held by a lender savings and loan association.

In the main, the facts are undisputed. Plaintiffs Robert L. Dodge and Walker Vaughn, partners, doing business under the name of Surrey Farm Developers, owned a certain lot in a tract in Santa Clara County. On March 21, 1961 they entered into an agreement with defendants Arthur P. Petersen and Dorothy Petersen to sell the lot to the latter for $7,500. Plaintiffs received a down payment of $100 and a promissory note for the balance secured by a deed of trust on the property. According to the agreement, the sale was subject to the buyers obtaining a construction loan and the sellers were to subordinate their purchase money deed of trust to any such loan. On April 30, 1961, plaintiffs received a payment of $900.

Mr. and Mrs. Petersen obtained a $19,000 construction loan from defendant Santa Clara Savings and Loan Association (Santa Clara Savings). This loan was evidenced by a promissory note executed by them in favor of Santa Clara Savings, secured by a deed of trust. Both of the aforementioned deeds of trust were recorded on March 30, 1961, the instrument securing Santa Clara Savings' loan being placed of record first in accordance with the subordination agreement and thereby becoming the senior encumbrance on the property.

The Petersens commenced construction of a home on the property according to plans approved by both plaintiffs and Santa Clara Savings. To this end they contracted with defendants and appellants John C. McBain, a plastering contractor, L. D. Gray, a concrete contractor, and Doud Lumber Company, Inc. and with defendant Williams & Russo, a masonry contractor.

Pursuant to the loan agreement entered into between them, Santa Clara Savings in April and May 1961 disbursed to the

Petersens from the loan proceeds three progress payments of $3,800 each, the last of these being made on May 11, 1961. In addition, several smaller disbursements were made from the loan fund. The parties before us agree that all disbursements totalled $12,051.56,[1] leaving a balance in the loan account of $6,948.44.

After receiving the third progress payment, the Petersens performed no additional work on the property and eventually abandoned the construction, defaulting on their purchase money note to plaintiffs. The latter thereupon caused the property to be sold under the power conferred in the purchase money (second) deed of trust and at such sale in October 1961 purchased the property themselves for $5,000 subject to the first deed of trust in favor of Santa Clara Savings.

When the construction of the building was abandoned, the four subcontractors abovementioned had unpaid bills against the Petersens for labor or materials totalling $4,311.59.[2] Each of them thereupon filed a mechanic's lien against the property and an action to foreclose the same. In addition, defendant and appellant McBain gave a stop notice to Santa Clara Savings (Code Civ. Proc., § 1190.1, subd. (h)), which notice was not accompanied by any bond.

Having purchased the subject property at the trustee's sale, plaintiffs Dodge and Vaughn on December 20, 1961 commenced the instant action for declaratory relief seeking a determination of the respective rights of the parties in the real property and in the undisbursed loan funds in the hands of Santa Clara Savings. Named as defendants, *inter alios,* were Mr. and Mrs. Petersen, Santa Clara Savings and the four lien claimants mentioned above. As disclosed by the pretrial conference order, plaintiffs took the position that the sale under the second deed of trust had eliminated the liens of the above four lien claimants; that none of the defendants except Santa Clara Savings had a valid lien on the property or claim to the unexpended loan funds; that if the court should declare that

---

[1] We will accept this total as agreed upon by the parties, although the items of disbursement appearing in the record total only $11,735.14.

[2] These were:

| | |
|---|---:|
| John C. McBain | $ 616.00 |
| L. D. Gray | 1,038.00 |
| Doud Lumber Co. | 2,121.91 |
| Williams & Russo | 535.68 |
| | $4,311.59 |

The foregoing amounts do not include interest or costs.

Santa Clara Savings' lien was only for the amount actually disbursed from the loan fund ($12,051.56), plaintiffs would make no claim to the unexpended loan funds; but that, if the court should declare that plaintiffs held their title subject to a lien in favor of the lender for the full amount of the loan, these plaintiffs were claiming all of the unexpended loan funds ($6,948.44) to complete the construction of the house. Defendant lien claimants, appellants[3] herein, contended not only that their mechanics' liens constituted valid liens against the property because construction had commenced prior to the recordation of plaintiffs' purchase money deed of trust but also that they had *an equitable lien* against the unexpended loan funds in the hands of Santa Clara Savings.

The cause proceeded to trial[4] and on August 1, 1962, after two days of testimony, was taken under submission. On September 5, 1962, the court filed its memorandum decision in which it concluded: that the lien of Santa Clara Savings was for the full amount of the loan ($19,000) plus interest accrued thereon; that the lien claimants failed to establish that the work of construction as a whole was started prior to the recordation of the two deeds of trust on March 30, 1961; that the "foreclosure of the purchase money [second] deed of trust wiped out mechanic's liens upon the property itself"; and that such "foreclosure" by plaintiffs cut off all their rights in the loan fund, thereby precluding them from asserting any claim to the unexpended balance in the hands of the lender. The decision concluded: "It is the conclusion of the Court, therefore, that the Defendant Santa Clara Savings & Loan Association has a lien on the property in the full amount of the construction loan; that to satisfy it, it must first exhaust its security, that is, by foreclosure of its deed of trust. If upon exhaustion of the security a deficiency remains, the Association may then apply the unexpended balance it has on hand to the satisfaction of that deficiency. If after this is done any unexpended balance still remains in the hands of the Association, it is subject to *equitable liens* on behalf of the four lien claimants mentioned above. If any balance should then remain, it would be payable to the Petersens." (Italics added.)

Presumably in accordance with the foregoing suggestion made in the court's memorandum decision, Santa Clara Savings caused the property to be sold under the power conferred

[3]That is, McBain, Gray and Doud Lumber Co., hereafter referred to as appellants.

[4]Defendants Petersen were apparently in default and did not participate in the trial.

in the first deed of trust and at the trustee's sale held on November 8, 1962 bought in the property itself for $14,600. The record reflects expenses of sale and accrued and unpaid interest due from the Petersens to the lender in the sum of $1,777.08.[5]

On February 18, 1964 the court filed findings of fact and conclusions of law which were generally in accord with its memorandum decision of September 5, 1962. So far as is here pertinent, it found that the lien of Santa Clara Savings was for the full amount of $19,000 plus accrued interest of $1,777.08; that the mechanics' liens of the four lien claimants did not take precedence over either the purchase money deed of trust or the construction loan deed of trust; that the work of construction was not commenced prior to the recordation of the two deeds of trust; that "the foreclosure of the purchase money deed of trust wiped out the mechanic's liens"; that the subcontractors and materialmen had valid and unpaid claims against the Petersens in amounts as previously noted herein (see fn. 2, *ante*); that the property had been sold under the first deed of trust as we have set forth *supra* and that there were expenses in regard to said sale totalling $871.36; and that after said sale for $14,600 and the application of $6,948.44 undisbursed loan funds to the debt owing from the Petersens to Santa Clara Savings "there remained no 'excess' for distribution to Defendant lien claimants."[6] Judgment was entered accordingly. This appeal followed.[7]

We reject as without merit appellants' initial contention that the work of construction was commenced prior to the recordation of the deeds of trust, thus establishing valid mechanics' liens against the property. Appellants urge this point upon us, seemingly oblivious of the settled principles requiring us to view the evidence in the light most favorable to respondent (see *Marshall* v. *Marshall* (1965) 232 Cal.App.2d 232, 236 [42 Cal.Rptr. 686] and cases there cited) and to uphold the finding under attack if any substantial evidence contradicted or uncontradicted supports it. (See *Marshall* v. *Marshall, supra,* at p. 246 and cases there cited.) Our

---

[5]The court set aside the submission of the case and received the foregoing evidence pursuant to written stipulations entered into by the parties and filed in the proceedings on January 17, 1963, and January 30, 1964. After the initial submission of the case on August 1, 1962 no further testimony was taken.

[6]The court also found that only defendant McBain served a stop notice on Santa Clara Savings and none of the lien claimants filed a bond as provided by Code of Civil Procedure, section 1190.1.

[7]As previously noted, lien claimant Williams & Russo did not appeal.

examination of the evidence pertinent to the issue, which we deem unnecessary to set forth in detail, satisfies us that it was in conflict, as indeed counsel for appellants conceded at oral argument. The resolution of this conflict was for the trial court. Its determination that the work of construction was not commenced prior to the recordation of the deeds of trust and that the mechanics' liens therefore were not to take precedence over the latter (Code Civ. Proc., § 1188.1) but in fact were extinguished by the trustee's sale under the second deed of trust (*Rheem Mfg. Co.* v. *United States* (1962) 57 Cal.2d 621, 625 [21 Cal.Rptr. 802, 371 P.2d 578]) must be upheld.

We reach the main issue on this appeal: whether appellants are entitled to payment from the unexpended balance of the loan funds upon a theory of equitable lien. As was said in *A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.* (1964) 61 Cal.2d 728, 732 [40 Cal.Rptr. 85, 394 P.2d 829]: "An equitable lien may be imposed on a construction-loan fund only if it is established that the *borrower or* lender induced the supplier of labor or materials to rely on the fund for payment. [Citations.]" (Italics added.) (*Smith* v. *Anglo-California Trust Co.* (1928) 205 Cal. 496, 501-504 [271 P. 898]; *Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co.* (1932) 216 Cal. 447, 450-452 [14 P.2d 510]; *Miller* v. *Mountain View Sav. & Loan Assn.* (1965) 238 Cal.App.2d 644, 660-662 [48 Cal.Rptr. 278].) The rationale of the rule permitting recovery on a theory of equitable lien is essentially this: that it would be inequitable and unjust to withhold from those persons who have by their labor and materials enhanced the value of the property the loan fund which constituted a material inducement to them in supplying such labor and materials and upon which they relied for reimbursement. (*Smith* v. *Anglo-California Trust Co., supra; Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co., supra; Miller* v. *Mountain View Sav. & Loan Assn., supra,* at pp. 661-662; see Ogden's Cal. Real Property Law, p. 619.) We recently said in *Miller, supra*: "Where the lender has received the benefit of the claimant's performance, and therefore a more valuable security for its note, it is not justified in withholding or appropriating to any other use money originally intended to be used to pay for such performance and relied upon by the claimant in rendering its performance. [Citations.]" (238 Cal.App.2d at pp. 661-662.) However, the right of subcontractors or materialmen to an equitable lien is not established merely by filing a mechanic's lien

claim. (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.*, *supra*; *Miller* v. *Mountain View Sav. & L. Assn.*, *supra*, at p. 663.)

In the instant case, appellants contend that "there was substantial uncontradicted evidence that each one of the lien claimants did in fact rely upon the borrowers' representation that they would be paid from the construction loan funds and that they supplied their labor and/or materials based upon this representation." Before turning to an analysis of the merits of such contention, we set forth the pertinent evidence and proceedings in the court below.

McBain, the plastering contractor, testified that he had a conversation with Petersen before commencing work and that Petersen was "in a great hurry to get his lath. . . . He [Petersen] claimed that he was getting a good—well, it is from the construction loan." McBain stated that he didn't "know what it was, who it was from at the time," but that Petersen was getting a substantial payment and that he (McBain) was to be paid therefrom. On cross-examination McBain admitted that he did not run a credit check on Petersen, that he did not know either the amount of the construction loan or the installment payments and that he was not aware of the identity of the lender.

Gray's testimony as to his knowledge and reliance on the fund was only that Petersen told Gray that he was to be paid for his services "75 percent out of the first . . . progress payment" and the balance on the fourth progress payment.

The sole evidence as to Doud's reliance on the fund was introduced by way of stipulation between Doud's counsel (Mr. Keough) and plaintiffs' counsel (Mr. Panelli). It was stipulated that if Mr. Doud were called as a witness he would testify that the Doud executives were "aware of the fact that there was a construction loan at the Santa Clara Savings & Loan and they were going to contact Mr. Zane or Mr. Maloney at . . . Santa Clara . . . with regard to payment. And we have already stipulated as to the amount of the bill." The court then inquired as to whether it was Mr. Doud's testimony that "he was both aware and relied on it, or simply he was aware of it?" Counsel for Doud replied: "Aware and relied. He has it entered on the ledger card, your Honor. I could call him to identify this." Counsel for plaintiffs then stated: "I would stipulate he relied on it."

At this point we dispose of a subsidiary issue raised by respondent. The record shows that all during the above collo-

quy concerning the stipulation nothing was said by counsel for Santa Clara Savings. Said respondent now claims that it is not bound by the stipulation since its counsel did not enter into it. ██ "A stipulation is an agreement between counsel respecting business before the court . . . , and like any other agreement or contract, it is essential that the parties or their counsel agree to its terms." (*Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 142 [199 P.2d 952]; see generally 46 Cal.Jur.2d p. 23; 50 Am.Jur. p. 611; 83 C.J.S., pp. 32-35.) ██ However, assent to a stipulation need not be made in a formal manner and under the particular circumstances of a case, where a party's counsel remains silent and makes no objection to the stipulation, his passive acquiescence may constitute an assent to it. (*Palmer* v. *City of Long Beach, supra*; 46 Cal.Jur.2d, pp. 23-24; see *Wilson* v. *Mattei* (1927) 84 Cal.App. 567, 571 [258 P. 453].)

The record in the instant matter reflects that except for a few comments on McBain's stop notice, respondent withdrew to the sidelines and permitted plaintiffs to carry the fight with appellants. Plaintiffs in their prayer for declaratory relief sought a declaration that all of the defendants except respondent Santa Clara Savings had no valid lien or claim against either the real property or the undisbursed loan funds. Santa Clara's answer consisted of a short general denial on information and belief with a prayer for judgment "declaring the respective rights of the parties as prayed for by Plaintiff, or as the Court may deem just." Respondent's position below as disclosed by the pretrial conference order and indeed by the general tenor of the record was "that either someone owes them $13,000.00 or someone owes them $19,000.00. . . ." At the start of the trial the court and all counsel convened in chambers at which time the court took up the claims of defendant lien claimants seriatim, inquiring whether there was any issue as to the filing, sufficiency or amount of the liens. As a result these matters were all stipulated to. This was effectuated in a colloquy between the court, counsel for plaintiffs (Mr. Panelli) and the respective counsel for the lien claimants, during which counsel for respondent was silent. At another point, the latter indicated that he would raise a question as to the timely service of the stop notice and "I will not stipulate as to its validity insofar as time is concerned." He also made a short comment on the purchase money deed of trust and stated that respondent's records of the transaction would be available. Our examination of these preliminary pro-

ceedings satisfies us that under the circumstances respondent's counsel assented to the stipulations which were more formally articulated by plaintiffs' counsel. It is noteworthy that respondent does not now claim otherwise. During the ensuing testimony witnesses were called by plaintiffs and the respective lien claimant defendants. Although the record may reflect random remarks by said counsel, it clearly shows that he did not conduct an examination or cross-examination of any of such witnesses and that the cross-examination of the lien claimants' witnesses was conducted by plaintiffs' counsel (Mr. Panelli).

At the conclusion of the testimony of appellant Gray, called on his own behalf, and cross-examined by plaintiffs' counsel (Mr. Panelli) and by appellant McBain's counsel (Mr. Mazzetti) but not questioned at all by respondent's counsel, the court inquired whether any other witness would be called. After a response by respondent's counsel (Mr. Christy),[8] there occurred the colloquy between the court, counsel for plaintiffs and counsel for Doud Lumber Company which resulted in the stipulation now challenged. Under all the circumstances of the case we are satisfied that the continued silence of Mr. Christy constituted an assent to the stipulation. Indeed, the present objection to the stipulation, seen in the perspective of the proceedings below, appears specious.

Respondent argues that the foregoing evidence as to reliance is of no avail to appellants anyhow, since the trial court found on substantial evidence that appellants were not induced to rely on the loan fund. There is no specific finding in so many words that appellants did or did not supply the labor and materials in reliance upon the loan fund.[9] As we have previously pointed out, the court in its memorandum decision determined that respondent Santa Clara Savings had a lien for the full amount of the construction loan ($19,000) and after first exhausting the security therefor could apply the unexpended balance to the debt, stating: "If after this is done any unexpended balance still remains in the hand of [respondent], it is subject to *equitable liens* on behalf of the four lien claimants mentioned above." (Italics added.) In its findings

[8]"MR. CHRISTY: I don't plan to call Mr. Zane of the Savings & Loan, your Honor, but I think there are some counsel who want to ask questions of him. I would like to get him on and out."

[9]Cf. *Miller* v. *Mountain View Sav. & Loan Assn., supra,* 238 Cal.App.2d 644, 663, where the trial court "found as a fact that respondent did the work 'in reliance upon the building and loan fund' and incorporated a similar conclusion of law." (Fn. omitted.)

of fact (finding 12), after finding that such sale under the deed of trust and such application of the undisbursed loan funds had occurred, the court found that "there remained no 'excess' for distribution to Defendant lien claimants."[10] It will be recalled that the court found that defendants' *mechanics'* liens had been extinguished by the sale under the purchase money (second) deed of trust. A comparison of the parallel language in the findings of fact and conclusions of law on the one hand and in the memorandum decision on the other makes it clear that in the former the court was referring to the *equitable* liens of defendants and that it in effect found that there were equitable liens but no excess of funds out of which they could be satisfied. ■ While the opinion of the trial court cannot be used to impeach findings, it can be used to explain them (*People* v. *One 1951 Ford Sedan* (1954) 122 Cal.App.2d 680, 683 [265 P.2d 176] ; *Oldis* v. *La Societe Francaise* (1955) 130 Cal.App.2d 461, 471-476 [279 P.2d 184] ) and as an aid to interpreting the findings where they are unclear. (*Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 366 [28 Cal.Rptr. 357].) We conclude that the trial court found there were equitable liens and by implication that appellants had supplied the labor and materials in reliance upon the construction loan. Contrary to respondent's claim, we are not impelled to a contrary view by finding 8 which reads : "Except as hereinabove specially stated, the allegations of . . . Defendants are untrue." The allegations contained in the pleadings of the various defendants make no mention of equitable liens; as pointed out above this theory of recovery seems to have been first mentioned at the pretrial conference.

■ We are therefore of the view that the court's implied finding of reliance is supported by the evidence heretofore summarized by us and we find merit in appellants' claim, referred to above, that in supplying labor and materials they relied upon the borrower's representation that they would be paid from the loan funds. Under the stipulation Doud was aware of the loan and relied upon it. Under the remaining evidence both McBain and Gray were told they would be paid from a construction loan, although neither of them had actual knowledge of the identity of the lender. ■ If the induce-

---

[10]The conclusions of law were to the same general effect: that respondent "then properly applied the total unexpended balance it had on hand to the satisfaction of that deficiency, leaving no excess to be distributed to defendant lien claimants. In doing so, the ASSOCIATION was exercising its 'bankers lien' against the unexpended balance."

ment to the appellants is thus predicated upon the conduct of the borrower, it would seem immaterial that appellants lacked actual knowledge of the identity of the lender, however chargeable they may have been with knowledge of the lender's identity which was ascertainable from the recorded first deed of trust. The main consideration is that appellants were induced by the *borrower* to rely on the loan fund for payment. Under the rule of the *A-1 Door* case, an equitable lien may be imposed on the fund if *either* the borrower *or* the lender induced persons in the position of appellants. (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn., supra,* 61 Cal.2d 728, 732.)

To summarize, it would seem that the trial court decided that the four defendant lien claimants had equitable liens assertible against the loan fund but that such liens were junior to respondent Santa Clara Savings' right to resort to the fund to satisfy any deficiency arising after a sale under its deed of trust. We therefore reach the crucial question whether this determination of priority should be upheld. We have concluded that it should not be.

We think that the equitable principles given recognition in *Smith, Ready Cut Homes* and *A-1 Door* justify the conclusion that, where suppliers of labor or materials have been induced to rely on the loan fund by either the *borrower or the lender,* their equitable liens on the fund should have priority over the claims of *both* of such last mentioned persons to the fund. Basically it is the fund itself and the arrangement for progress payments therefrom, created by the mutual agreement of the borrower and the lender, that constitutes the material inducement to the subcontractors and materialmen. (*Smith* v. *Anglo-California Trust Co., supra,* 205 Cal. 496, 503.) As the court said in *Ready Cut Homes*: "The essential basis of the opinion [in *Smith*] is the justifiable *reliance on the fund* by the lien claimants." (Italics added.) (*Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co., supra,* 216 Cal. 447, 450.)

Reliance on the fund having been established, we can find no equitable consideration compelling a preferential position for the fundholder such as respondent herein who conjointly with the borrower was responsible for the existence of the very arrangement which became a material inducement to the lien claimants. Respondent by its first (construction loan) deed of trust occupied the paramount position of senior encumbrancer. Junior to its encumbrance but senior to appellants' liens was

the second (purchase money) deed of trust, of which respondent lender was fully aware. Appellants, therefore, faced the precarious situation of contributing labor and materials to property heavily encumbered by two loans and the dim prospect of asserting claims of mechanics' liens clearly subordinate to both. On the evidence before us they were told by the borrower that they would be paid from the loan funds. Clearly, every consideration based on equity and good conscience precluded the borrower from claiming priority over them. What equitable consideration dictated a more favorable treatment for the lender? The lender had already protected itself with a first priority encumbrance on the property. Indeed it was because of such preferred positions of both lender and sellers that the remedy of equitable lien was judicially created for the protection of subcontractors and materialmen in this type of situation. Respondent not only occupied this favored position but under the terms of the loan agreement had full control of the loan funds and of the progress payments to be disbursed therefrom. Respondent was therefore in a commanding position to employ well known and commonly accepted business and fiscal methods[11] to prevent the diversion or dilution of the progress payments by the owners to the prejudice of appellants. Since the progress payments were in fact what they were denominated, that is payments as the work reached specified stages of completion, and since they were disbursed only after respondent was satisfied by an inspection of the property that such stages had been reached, it would be naive to speculate that respondent might be unaware of any reliance on the loan funds by persons contributing to the progress of the work. In the instant case, respondent Santa Clara Savings occupied a preferred and secure position by virtue of its first deed of trust and full control of the loan funds. It does not seem to us to be consonant with the philosophy expounded in *Smith* to grant still another prior lien on the *loan funds themselves* to such a lender-fund holder who despite its dominant position in the arrangements and its apparent sophistication in commercial financing had chosen not to protect its preferred position but would nevertheless claim the benefits that the labor and materials of others have contributed to the property. (*Miller* v. *Mountain View Sav. & Loan Assn., supra,* 238 Cal.App.2d 644, 658-659; see *Rossman Mill & Lbr. Co.* v. *Fullerton Sav. &*

---

[11]In this connection see opinion of this court in *Miller* v. *Mountain View Sav. & Loan Assn., supra,* 238 Cal.App.2d 644, 658-659.

*Loan Assn.* (1963) 221 Cal.App.2d 705, 710 [34 Cal.Rptr. 644]; 12 U.C.L.A. L.Rev. 1246, 1252-1253; 1 Miller & Starr, Current Law of Cal. Real Estate (1965) pp. 614-615.)

Under the circumstances, therefore, we can find no transcendent equitable consideration favorable to respondent in the fact that the representations made to appellants as to the payment of their claims emanated from the borrower and not the lender or in the fact that respondent sat back in serene detachment awaiting the proper time for the disbursement of the funds. As we have said, although appellants ground their reliance on statements made by the owners, the significant circumstance is the reliance on the fund which existed by the *joint acts* and *mutual agreement* of both the owners and the lender.

In this connection, the following language from *Smith* is apposite: "That the lien claimants must have relied upon the fund to be advanced to Smith by the securities company, and not alone upon the individual capacity of Smith or their right to a last lien upon the premises, as a means of obtaining payment for their labor and materials, is supported by every reasonable inference deducible from the surrounding circumstances. Smith was engaged in building upon land *for which he had not paid the purchase price* and *which was charged with and subject to the several deeds of trust executed and delivered to secure the entire purchase money.* The incapacity of Smith to build without a prearranged loan was emphasized by the existence of these purchase-money encumbrances and attested by *the agreement with the securities company for a loan to be used expressly for building purposes.* It is also reasonably apparent from the record herein that this loan could not have been obtained *without giving the deed of trust for its security priority over the purchase-money deeds of trust.* . . . It requires very little showing, therefore, to produce the conclusion that without confidence in the payment to Smith of the full amount of the loan contracted for the lien claimants would not have extended credit for their labor and materials. The reasonableness of such expectations on the part of the lien claimants must, naturally, have suggested itself both to Smith and the securities company. They should have known that the *consummated agreement for the money to be advanced* to or on behalf of Smith as the buildings progressed, under a deed of trust taking priority over the statutory liens available to those contracting with him or the general contractor, *would constitute a material inducement* to them in

supplying labor and materials. As if in express recognition of the reasonableness of these expectations, the practice was to make payments from, or withdrawals upon, the building loan account only as the work progressed and *after the appraiser for the securities company had, in the line of his duty, reported progress warranting a payment.* . . . Smith and the securities company by their conduct may be said to have induced, or contributed to induce, the lien claimants to *enhance the value of the real property by their labors* and *materials, and it would be inequitable and unjust,* it seems to us, to permit Smith or his personal representative to withhold, at this time, any part of the fund upon which the lien claimants must surely have relied for reimbursement." (Italics added.) (205 Cal. at pp. 502-504.)

The instant facts are strikingly similar. Here the Petersens made only a $100 'down payment on the property and gave a deed of trust to secure payment of the balance of the purchase price. Here, too, obviously lacking finances to build the house, they obtained a construction loan from respondent, giving as security for such obligation a deed of trust with seniority over the purchase money deed of trust. As in *Smith,* with both deeds of trust having priority over statutory liens, both the borrower and lender should have realized that the resultant system of progress payments would constitute a material inducement to appellants in supplying labor and materials. As in *Smith,* arrangements in the instant case called for the making of progress payments from the loan account only after respon'dent-lender had satisfied itself as to the progress of the work.[12] Finally, it is undisputed that appellants enhanced the value of the property by their labors and materials.

---

[12]The record establishes not only a loan agreement between the Petersens and respondent but also pursuant thereto written instructions by the former to the latter covering disbursements to be made under the construction loan. At the time respondent set up the loan on its books, it made up two ledger cards—one, a ''Loan Account Ledger'' on which were to be recorded payments by the borrowers (Petersens); and the other ''an incomplete loan ledger card, which is made up for the disbursements.'' After the loan was made and the amount thereof entered on the loan account ledger, the borrowers could not withdraw the funds until they had performed the various stages of construction. The amount of the loan ($19,000) was ''set aside in the incomplete loan account'' over which respondent had complete control and from which it was obligated to make progress payments as the work was completed. As we have said, under this arrangement three progress payments were made by respondent to the Petersens as the building reached various stages of completion, the lender in each instance satisfying itself by an inspection of the premises that the proper amount of work had been done.

N.B. This and other evidence referred to was introduced through the witness Zane, an employee of respondent who handled the entire·transac-

*Ready Cut Homes* is also persuasive. There the plaintiff and others filed liens against the property and the defendant-lender pursuant to its loan agreement applied the unexpended balance in the loan account to reduce the balance of principal and interest due on the loan. Thereafter the borrowers (owners) defaulted and the lender elected to have the property sold under its deed of trust. Plaintiff, a materialman, sued to enjoin the trustees' sale and to subject the unexpended balance of the loan to an equitable lien in its favor. Judgment denying recovery was reversed with directions that judgment be entered in the plaintiff's favor. Rejecting the lender's contention that the *Smith* case was distinguishable since it involved a conflict between lien claimants and the borrower rather than between such claimants and the lender, the court said: "However, the equitable considerations are identical with those presented in the former case. The defendant mortgage company, having received the benefit of plaintiff's performance in the form of a completed building and therefore a more valuable security for its note, is not justified in withholding or appropriating to any other use money originally intended to be used to pay for such performance, and relied upon by plaintiff in rendering its performance. The theory of equitable lien, as laid down in the *Smith* case, is quite broad (see 17 Cal.L.Rev. 411), and it is fully applicable to the instant case." (216 Cal. at pp. 451-452.)

We conclude that where, as here, persons supplying labor and materials to the property have been induced by either the borrower or the lender to rely on construction loan funds for payment, it comports with justice and fair dealing that their equitable lien assertible against such funds should have priority over any claims of the borrower and the lender by whose joint agreement the construction financing was provided, implemented and carried out.

Respondent argues that both *Smith* and *Ready Cut Homes* are inapplicable herein because in each of those cases the building was *completed*. As we recently pointed out in *Miller v. Mountain View Sav. & Loan Assn., supra,* 238 Cal.App.2d 644, 664, the building involved in *A-1 Door* was *not* completed and the Supreme Court, although reversing as to the equitable liens, nevertheless "did not indicate that an equitable lien could not exist in the absence of a completed building.

---

tion. Apropos our previous remarks on respondent's passive position at the trial, it is noteworthy that Zane was called by plaintiffs and recalled by the court but never called by respondent itself.

"In *Pacific Ready Cut Homes* the lender was expressly denied the right to offset the balance held against the principal of the loan to the detriment of the lien claimant. It is no great step to conclude that such offset should not be allowed even though the building is not complete, as was done by the district court of appeal in *A-1 Door* ((Cal.App.) 36 Cal.Rptr. 576, 583). The reasoning behind *Smith* and *Pacific Ready Cut Homes* is as applicable to the claimant putting in the foundation, or the rough plumbing, as it is to the carpenter driving the last spike. ▮▮▮ All other factors being equal the rights of one contributing to the construction should not depend on the state thereof at which his contribution was made.

''The fact that the charge-back was made before respondent gave his notice, filed his lien, or filed his action should not affect the matter; nor does the fact that appellant recorded notice of default and election to sell. Both of these events transpired in *Pacific Ready Cut Homes* before suit was filed.'' (238 Cal.App.2d at p. 664.)

▮▮▮ We hold that appellants McBain, Gray and Doud Lumber Co. had equitable liens against the $6,948.44 unexpended balance of the loan funds together with any accruals thereon (hereafter collectively referred to as ''loan funds'') which liens had priority over any right of respondent Santa Clara Savings to apply said loan funds to the indebtedness of the Petersens owing and due to said respondent; and that said appellants are entitled to a judgment ordering payment from said loan funds in the amount of their respective claims, together with interest and costs. The judgment must therefore be reversed.

The judgment in favor of appellants shall provide for interest on the amounts of their claims computed at legal rates from the respective dates such obligations became due from the Petersens (Civ. Code, §§ 3287, 3302) or from the date of entry of any judgment heretofore obtained by appellants against the Petersens establishing their said claims, as the case may be. The record now before us, while reflecting the commencement by appellants of actions to foreclose mechanics' liens, does not furnish us with sufficient information to specify herein the dates from which interest shall be computed. On remand, the court should determine such dates either from evidence already received or, if none, by the receipt of additional evidence or by proper judicial notice. In the event that the total of the amounts to which appellants are thus entitled exceeds such loan funds, the judgment ordered herein shall provide

for the pro-ration thereof so that the total amount recoverable by appellants shall equal but not exceed said loan funds.

█ Notwithstanding the fact that appellants have appeale'd from the judgment "and from the whole thereof," the nonappealing lien claimant is not entitled to derive any benefit from our reversal of the judgment. (*Smith* v. *Anglo-California Trust Co.*, *supra*, 205 Cal. 496, 505.) As to such nonappealing defendant (Williams & Russo) and as to plaintiffs, the determination of priority by the trial court shall remain unaffected by the reversal. █ Appellant McBain is entitled to no priority over the other appellants because of his having served an unbonded stop notice as previously noted. Nor is his right to recover as ordered herein predicated in any way on such stop notice. We reject McBain's claims predicated thereon. Since he failed to file a bon'd with his stop notice, he is precluded from obtaining relief under the applicable statute. (Code Civ. Proc., § 1190.1, subd. (h); *Miller* v. *Mountain View Sav. & Loan Assn.*, *supra*, 238 Cal.App.2d 644, 661.) His further claim that respondent voluntarily withheld the loan funds on his behalf pursuant to the stop notice is without any foundation in the record.

The judgment is reversed and the cause is remanded to the trial court with 'directions to amend its findings of fact and conclusions of law and to enter judgment in favor of appellants in conformity with the views herein expressed. Appellants shall recover costs on appeal.

Molinari, J., concurred.

SIMS, J.—I dissent. This case involves the question of an equitable lien against a loan account created by the lender. There are on the one hand equitable rights against the borrower which the claimants may assert against funds which the lender acknowledges, or which in fact, are held for the borrower's account. (*Smith* v. *Anglo-California Trust Co.*, 205 Cal. 496, 502 [271 P. 898].) There also may be equitable rights against the lender which are created by his express or implied representations that the funds will be paid or applied for the account of the claimants. In *Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co.*, the court held that the uncontra'dicted evidence compelled such a conclusion (216 Cal. 447, 451); and in *Miller* v. *Mountain View Sav. & Loan Assn.* it was noted: "In setting up this system of making payments appellant [lender] can be charged with inducing reliance on the payments it would make, and respondent can be said to have

relied on the payments to be made to its escrow agent by a financial institution, even though he did not then know its identity. The evidence is sufficient to sustain the findings and conclusions of the trial court.'' (238 Cal.App.2d 644, 663.)

Here the evidence set forth in the majority opinion justifies, if not compels, a finding that the claimants have equities superior to the borrower in respect of any loan funds that would be available to him (*Smith* v. *Anglo-California Trust Co., supra*). One searches in vain, however, for any evidence which would support, much less compel, findings contrary to those implied from the decision of the trial court, to wit: that the lender had done nothing to indicate that he would do other than pay the loan funds out to the borrower-builder in accordance with the stages of progress of the work, and that all progress payments so due had been paid.

The policy reasons for making the lender an insurer of payment to lien claimants are persuasive and attractive. The Legislature, however, by acting to create a system wherein a claimant may protect himself by giving a stop notice, has halted short of adopting this concept. The courts have been vigilant to protect the claimants where the lender has in any manner led them to expect payment from him, but this case would plow fields heretofore left uncultivated. Since the lender must generally look to the land and improvements for rapayment of his original advance and any amounts he is compelled to pay out to equitable lienholders, the effect of the decision is to give a mechanic's lien claimant a priority over the lender with the first deed of trust, whenever he can show that the borrower—not necessarily the lender—induced him to rely on the loan fund.

In the absence of some estoppel or unjust enrichment that can be asserted against the lender, existing law does not require him to advance funds on terms to which he never agreed. I would affirm the findings and judgment of the lower court which are sustained by the record.

Respondent's petition for a hearing by the Supreme Court was denied June 29, 1966.