# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0328

═══════════

AMANDA BRADSHAW, PETITIONER,

v.

BARNEY SAMUEL BRADSHAW, RESPONDENT

════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS

════════════════════════════════════════

**Argued February 28, 2018**

CHIEF JUSTICE HECHT announced the judgment of the Court and delivered an opinion in which JUSTICE BROWN and JUSTICE BLACKLOCK joined.

JUSTICE DEVINE filed an opinion concurring in the judgment, in which JUSTICE GUZMAN joined.

JUSTICE LEHRMANN filed a dissenting opinion.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE GREEN, JUSTICE JOHNSON, and JUSTICE LEHRMANN joined.

While married to Amanda Bradshaw, Barney Samuel Bradshaw was convicted and sentenced

to 60 years in prison for the continuous sexual abuse[1] of Amanda's daughter, who was younger than

---

[1] *See* TEX. PENAL CODE § 21.02(b) ("A person commits an offense if: (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.").

14 years old at the time of the offense.[2] In the couple's divorce, the trial court divided their community home 80% to Amanda and 20% to Barney. The court of appeals affirmed.[3] Amanda contends that the division was not just and right and that she should have been awarded 100% of the home because of his criminal abuse of the family.[4] We reverse the judgment of the court of appeals and remand the case to the trial court to reconsider the division of the community estate.

## I

Amanda and Barney married in November 2010 and lived together in a home Amanda owned before the marriage, together with Amanda's 2 young daughters, S.S. and A.G., and A.G.'s sister, K.M. In February 2012, the home was destroyed by fire. Using insurance proceeds, Amanda paid off the mortgage, sold the property, and bought a new home for the family in June 2012.

That summer, Barney, then 34, began sexually abusing Amanda's 13-year-old daughter, S.S. Barney was accused of requiring S.S. to perform various sex acts with him for more than a year, often daily, sometimes weekly, stopping for a while, then resuming. Barney had also sexually abused A.G., then 15, who knew he was abusing S.S. When K.M., then 16 or 17, told A.G. that Barney had abused her, A.G. said that she and S.S. had both had "sexual problems" with Barney.[5] In August 2013, S.S., A.G., and K.M. were visiting their aunt for a few days when they began to talk with each

---

[2] *Bradshaw v. State*, 466 S.W.3d 875, 877 (Tex. App.—Texarkana 2015, pet. ref'd).

[3] 487 S.W.3d 306, 312 (Tex. App.—Texarkana 2016).

[4] *See* TEX. FAM. CODE § 7.001 ("In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.").

[5] *Bradshaw*, 466 S.W.3d at 883.

other about their shared nightmare. "[I]n the midst of great angst and emotion", with the girls "crying hysterically," A.G. told the aunt, "[Bradshaw has] been messing with us, and we can't take anymore, and [S.S.] has been getting the brunt of it."[6] "[We want] 'this to stop.'"[7] The aunt called the police.[8]

Barney was charged with continuous sexual abuse of a young child, S.S., who was at the time of the offense younger than 14 years old.[9] The 3 girls all testified at the trial, as well as a friend of theirs, B.P., whom Barney had also sexually assaulted. All the abuse occurred in the Bradshaw home, the yard, the bathroom, and Barney's bedroom. Barney was convicted and sentenced to 60 years in prison without parole.

Meanwhile, Amanda had filed for divorce. At the hearing, she testified only very briefly, and Barney, in jail awaiting trial, was not allowed to testify. The court awarded Amanda all of the community estate[10] and the home as her separate property. The court of appeals reversed, holding that the evidence did not support either the award of all the community property to Amanda or the characterization of the home as her separate property.[11]

---

[6] *Id.* (alterations in original).

[7] *Id.*

[8] *Id.*

[9] *See* TEX. PENAL CODE § 21.02(b).

[10] The court awarded Amanda the community property in her possession and awarded the same to Barney. But because Barney was incarcerated, this essentially amounted to an award of the community estate to Amanda.

[11] *In re Marriage of Bradshaw*, No. 12-14-00056-CV, 2014 WL 3940092, at *2–4 (Tex. App.—Tyler Aug. 13, 2014, no pet.) (mem. op.).

On remand, Amanda presented additional evidence. She testified that Barney had physically abused her on multiple occasions, and S.S. and A.G. testified that Barney had sexually abused them repeatedly. Barney testified by telephone from prison. He claimed an interest in the fire insurance proceeds and in the home, asserting that he had made extensive repairs to it. He denied all the allegations of abuse, contending that they had been concocted to deprive him of an interest in the home. While the case was pending in the trial court, Barney's conviction was affirmed on appeal.[12]

Between the divorce case and the criminal case, 5 different women testified under oath to Barney's physical and sexual abuse. For some, the abuse continued for more than a year. Nearly all of the abuse occurred at the Bradshaw home during Barney and Amanda's 3-year marriage. The trial court found that the home was community property and awarded 80% of it to Amanda and 20% to Barney, based on "fault in the breakup of the marriage". The court awarded the rest of the community property to the party in possession.

Amanda appealed, arguing that she should have been awarded 100% of the home and that anything less was not "just and right". The court of appeals affirmed the property division, noting that "although fault may be considered in making a disproportionate distribution of community property, '[t]he division should not be a punishment for the spouse at fault.'"[13]

We granted Amanda's petition for review.[14]

---

[12] *Bradshaw*, 466 S.W.3d at 884.

[13] 487 S.W.3d 306, 312 (Tex. App.—Texarkana 2016) (quoting *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980) (alteration in original)).

[14] 61 Tex. Sup. Ct. J. 254 (Jan. 19, 2018). Because Barney was without counsel, the Court referred the case to the Supreme Court of Texas Pro Bono Program available through the State Bar of Texas Appellate Section. Barney has been very ably represented in this Court by counsel obtained through the Program.

## II

The division of a community estate in divorce must be "just and right, having due regard for the rights of each party and any children of the marriage."[15] "Just" and "right" are broad terms. *Black's Law Dictionary* defines "just" as "[l]egally right; lawful; equitable",[16] and "right" as "[t]hat which is proper under law, morality, or ethics".[17] And "due regard" simply means the "[a]ttention, care, or consideration"[18] that is "[j]ust, proper, regular, and reasonable".[19] A trial court should consider many factors, including "the spouses' capacities and abilities . . . and the nature of the property."[20] The court may consider the "fault in breaking up the marriage", though the community-property division "should not be a punishment for the spouse at fault."[21] In the end, "the court is to do complete equity as between the husband and wife and the children, having due regard to all obligations of the spouses and to the probable future necessities of all concerned."[22]

Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision.[23] The division "should be

---

[15] TEX. FAM. CODE § 7.001.

[16] *Just*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[17] *Right*, id.

[18] *Regard*, id.

[19] *Due*, id.

[20] *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981).

[21] *Young v. Young*, 609 S.W.2d 758, 761–762 (Tex. 1980).

[22] *Hedtke v. Hedtke*, 248 S.W. 21, 22 (Tex. 1923).

[23] *Murff*, 615 S.W.2d at 698.

corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair."[24] The appellate court cannot merely reweigh the evidence. Rather, "[a] determination of whether the property division decreed in a divorce constitutes an abuse of discretion presents a legal rather than a factual question for appellate review."[25] And in deciding that legal question, the trial court is entitled to no deference. "[A] trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled."[26]

Thus, the issue before us is this: In the circumstances presented, can it be just and right, as a matter of law, in dividing a community estate in divorce, to award an interest in the family home to a spouse convicted of using the home to sexually abuse his stepdaughter? The issue is not whether Barney's conviction for sexual abuse of his stepdaughter contributed to the breakup of his marriage and for that reason could be considered in dividing the community estate. The trial court appears to have done just that. Nor is the issue whether awarding Amanda 100% of the home "could operate to punish Barney for his fault in the dissolution of the marriage," as the court of appeals worried.[27] It can certainly be argued that Barney's punishment was his 60-year prison sentence, not the unequal division of the home (though as JUSTICE BOYD observes, "[a] sixty-year prison sentence hardly seems sufficient").[28] Wholly apart from whether Barney's crime contributed to the breakup of the

---

[24] *Hedtke*, 248 S.W. at 23.

[25] *Mann v. Mann*, 607 S.W.2d 243, 244 (Tex. 1980).

[26] *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (internal quotations omitted); *accord In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004); *Huie v. DeShazo*, 922 S.W.2d 920, 927–928 (Tex. 1996); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

[27] 487 S.W.3d 306, 312 (Tex. App.—Texarkana 2016).

[28] *Post* at ___.

6

marriage, the question is whether it can be just and right to award him an interest in the home he repeatedly used to sexually abuse multiple victims, including his stepdaughters.

We have little difficulty answering no. As broad as the terms "just" and "right" are, they are not meaningless. They express values fundamental to our society, values we hold precious. Our society is diverse, and perceptions of what is "just" and "right" can differ with perspective. But we think it virtually beyond argument that awarding Barney an interest in the very home he used to sexually abuse his stepdaughter, for which he was convicted, and others is unjust and wrong, not as a matter of fact, but as a matter of law. Such an award was thus an abuse of discretion.

Barney argues that the award is justified because Amanda took $5,000 from his disability benefits account after filing for divorce, he worked on the home and helped furnish it, Amanda offered no evidence that his criminal conviction affected her financially, and awarding her 100% of the home could be considered punitive. These arguments might be relevant to whether this is an appropriate uneven distribution for fault in the breakup of the marriage. But they miss the point: Barney should not be awarded an interest in the home he was convicted of using to sexually assault his stepdaughter. Barney insists that the allegations against him are untrue, and that the award of 20% of the home was "a hedge against any residual doubt" the trial court may have had that he is guilty as charged. But the evidence against him in the criminal trial was overwhelming, the sentence was severe, and his conviction has been affirmed on appeal. Barney argues that awarding Amanda 100% of the home would be unjust because she was given other community property in her possession that was his. But the case is being remanded for reconsideration of the division of the community estate, and those arguments are best addressed on remand.

7

For JUSTICE BOYD, "Barney's cruelty and the harm he inflicted on Amanda and her daughters are indisputably abhorrent and intolerable in any civilized society",[29] but he argues that the Court has "found an abuse of discretion only when the trial court ignores a governing legal standard."[30] JUSTICE BOYD contends that while he "might"—not *would*, but *might*—personally agree that Barney should have no interest in the home, that cannot override the trial court's exercise of discretion. If awarding Barney an interest in the home could be just and right, we would agree. But it cannot be— as a matter of law. JUSTICE BOYD opines that "this Court's view of what is 'just and right' is irrelevant to the issue before us."[31] In finally interpreting a statute, this Court's view is all that is relevant. "Maybe", JUSTICE BOYD muses, "Texas law should require those who abuse their spouses or children or step-children to forfeit all interests in any property they use to commit those crimes. But the State's right, in the exercise of its police power, to 'declare a forfeiture of the property of private individuals' involves policy decisions best exercised by the Legislature, not by this Court."[32] In the circumstances of this case, we disagree. The Legislature has already made the policy decision: a division of a community estate must be just and right.[33] As JUSTICE BOYD notes, "we must 'take

---

[29] *Post* at ___.

[30] *Post* at ___.

[31] *Post* at ___.

[32] *Post* at ___ (quoting *State v. Richards*, 301 S.W.2d 597, 600 (Tex. 1957)).

[33] TEX. FAM. CODE § 7.001.

8

statutes as we find them.'"[34] As a matter of law, the trial court's division of the home in this case is neither just nor right.

JUSTICE BOYD states that "when a statute authorizes the trial court to make a discretionary determination by applying equitable standards like 'just and right,' appellate courts cannot restrict that discretion by declaring that a particular application is or is not just and right."[35] But that is precisely what appellate courts do, as we have done, for example, in holding that using a community division to punish a spouse for fault in the breakup of the marriage is not just and right.[36] JUSTICE BOYD argues that even if we spoke for the Court, our decision would not be retroactive.[37] Rarely are our decisions *not* retroactive, and JUSTICE BOYD does not argue why a legal interpretation of "just and right" would be an exception.

To be clear, we limit our opinion today to narrow circumstances where the behavior involves the use of community property, is as egregious as Barney's, and results in a criminal conviction. Family violence is, deplorably, all too common. We do not hold that its occurrence alone deprives the guilty spouse of an interest in all or even a specific part of the community estate. The elements that compel our decision are that Barney sexually abused his stepdaughters and others repeatedly over a protracted period, that he used the family home to commit the abuse, and that he was convicted and severely sentenced for the continuous sexual abuse of a child under the age of 14. One

---

[34] *Post* at ___ (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009)).

[35] *Post* at ___.

[36] *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980).

[37] *Post* at ___.

can hypothesize a harder case than this one—a single incident, weak evidence, an enormous home, no criminal conviction. A division of community property can be just and right despite violence directed against the family. The award of an interest in the home to Barney cannot be. JUSTICE BOYD complains that this is "unworkable as a legal principle."[38] We fail to see why it is more unworkable than reasonableness, a standard that pervades the law.

"Amanda presents a forceful argument", JUSTICE BOYD begrudges.[39] We agree.

*      *      *      *      *

The judgment of the court of appeals is reversed and the case is remanded to the trial court for further proceedings.

Nathan L. Hecht
Chief Justice

Opinion delivered: June 29, 2018

---

[38] *Post* at ___.

[39] *Post* at ___.